

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---
### NO. PD-0170-16
---

### ORLANDO SALINAS, Appellant

### v.

### THE STATE OF TEXAS

---
### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTEENTH COURT OF APPEALS
### HARRIS COUNTY
---

KELLER, P.J., delivered the opinion of the Court in which KEASLER, HERVEY, ALCALA, and WALKER, JJ., joined. HERVEY, J. filed a concurring opinion. YEARY, J., filed a dissenting opinion in which RICHARDSON and NEWELL, JJ., joined. NEWELL, J., filed a dissenting opinion in which RICHARDSON, J., joined. KEEL, J., did not participate.

When a defendant is convicted in a criminal case, various statutes require the payment of fees as court costs. One of these statutes assesses a consolidated fee: the defendant pays a single fee, but the money from that fee is divided up among a variety of different state government accounts according to percentages dictated by the statute. Appellant challenges the assessment of the

consolidated fee with respect to two of the listed accounts: an account for "abused children's counseling" and an account for "comprehensive rehabilitation." Appellant claims that the unconstitutionality of these two statutory provisions renders the entire consolidated fee statute unconstitutional. We conclude that, with respect to the collection and allocation of funds for these two accounts, the statute is facially unconstitutional in violation of separation of powers. We also hold, however, that the invalidity of these two statutory provisions does not render the statute as a whole unconstitutional. As a result, we hold that any fee assessed pursuant to the consolidated fee statute must be reduced pro rata to eliminate the percentage of the fee associated with these two accounts. We reverse the judgment of the court of appeals and render judgment modifying the court costs in appellant's case.

### I. BACKGROUND

Appellant was convicted of injury to an elderly individual, a felony,[1] and sentenced to five years in prison. In a certified bill of costs, $133 was assessed pursuant to the consolidated fee statute, Texas Local Government Code § 133.102.[2]

On appeal, appellant raised a facial constitutional challenge to the assessment of the consolidated fee on the basis that twelve of the fourteen accounts listed in the statute were not sufficiently related to the court system to be valid recipients of money collected as court costs.[3] The

---

[1] TEX. PENAL CODE § 22.04(e)-(g). Any references to a code in this opinion are to the current version unless otherwise specified.

[2] *See infra* at part II.B.

[3] *See Salinas v. State*, 426 S.W.3d 318, 325 (Tex. App.–Houston [14th Dist.] 2014), *rev'd*, 464 S.W.3d 363 (Tex. Crim. App. 2015).

court of appeals rejected appellant's claim,[4] but on his petition to this Court, we reversed and remanded the case for further consideration.[5] On remand, appellant challenged the consolidated fee on the basis of three of the accounts listed in the statute.[6] Now, on discretionary review, appellant challenges only two accounts.

The court of appeals held that interconnected statutes direct the comptroller to allocate proceeds collected for the comprehensive rehabilitation account to uses that relate to the administration of our criminal justice system and are thus legitimate criminal justice purposes.[7] With respect to the abused children's counseling account, the court of appeals held that, although no current statute mandates how the proceeds of that account are to be spent, "abused children's counseling" on its face relates to the administration of our criminal justice system by providing resources for victimized children.[8] Concluding that appellant failed to establish that the consolidated fee statute was facially unconstitutional, the court of appeals affirmed the trial court's judgment.[9]

## II. ANALYSIS

### A. Facial Challenges, Separation of Powers, and Court Costs

Appellant claims that Local Government Code § 133.102 is facially unconstitutional in its entirety because some of the funds from the consolidated fee are statutorily apportioned to accounts

---

[4] *Id.* at 327-28.

[5] *Salinas*, 464 S.W.3d at 368.

[6] *Salinas v. State*, 485 S.W.3d 222, 226 (Tex. App.–Houston [14th Dist.] 2015).

[7] *Id.* at 226.

[8] *Id.*

[9] *Id.* at 226-27.

that do not serve legitimate criminal justice purposes. A facial challenge is an attack on the statute itself as opposed to a particular application.[10] Except when First Amendment freedoms are involved, a facial challenge to a statute is a challenge to the statute in all of its applications.[11]

Appellant's facial constitutional challenge is grounded on separation of powers. In the Texas Constitution, separation of powers between the branches of government is expressly guaranteed:

> The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.[12]

One way the Separation of Powers provision is violated is "when one branch of government assumes or is delegated a power 'more properly attached' to another branch."[13] The courts are delegated a power more properly attached to the executive branch if a statute turns the courts into "tax gatherers," but the collection of fees in criminal cases is a part of the judicial function "if the statute under which court costs are assessed (or an interconnected statute) provides for an allocation of such court costs to be expended for legitimate criminal justice purposes."[14] What constitutes a legitimate criminal justice purpose is a question to be answered on a statute-by-statute/case-by-case basis.[15]

---

[10] *Peraza v. State*, 467 S.W.3d 508, 514 (Tex. Crim. App. 2015) (quoting *City of Los Angeles v. Patel*, 135 S. Ct. 2443, 2449 (2015)).

[11] *State v. Johnson*, 475 S.W.3d 860, 864 (Tex. Crim. App. 2015).

[12] TEX. CONST. art. II, § 1.

[13] *Ex parte Lo*, 424 S.W.3d 10, 28 (Tex. Crim. App. 2014) (op. on State's motion for reh'g).

[14] *Peraza v. State*, 467 S.W.3d at 517.

[15] *Id.* at 517-18.

And the answer to that question is determined by what the governing statute says about the intended use of the funds, not whether funds are actually used for a criminal justice purpose.[16]

## B. The Consolidated Fee Statute

We set forth the portions of the consolidated fee statute that are relevant to our analysis of appellant's facial constitutional challenge:

(a) A person convicted of an offense shall pay as a court cost, in addition to all other costs:

(1) $133 on conviction of a felony;

(2) $83 on conviction of a Class A or Class B misdemeanor; or

(3) $40 on conviction of a nonjailable misdemeanor offense, including a criminal violation of a municipal ordinance, other than a conviction of an offense relating to a pedestrian or the parking of a motor vehicle.

* * *

(b) The court costs under Subsection (a) shall be collected and remitted to the comptroller in the manner provided by Subchapter B.

* * *

(e) The comptroller shall allocate the court costs received under this section to the following accounts and funds so that each receives to the extent practicable, utilizing historical data as applicable, the same amount of money the account or fund would have received if the court costs for the accounts and funds had been collected and reported separately, except that the account or fund may not receive less than the following percentages:

(1) abused children's counseling        0.0088 percent;

* * *

---

[16] *Salinas*, 464 S.W.3d at 368.

(6) comprehensive rehabilitation          9.8218 percent;[17]

The question here is whether the two accounts at issue ("abused children's counseling" and "comprehensive rehabilitation") meet the requirement that the relevant statutes provide for an allocation of funds "to be expended for legitimate criminal justice purposes."

### C. "Comprehensive Rehabilitation" Account

The "Comprehensive Rehabilitation" account is a general revenue fund dedicated to "provide rehabilitation services directly or through public or private resources to individuals determined . . . to be eligible for the services under a vocational rehabilitation program or other program established to provide rehabilitation services."[18]  These rehabilitation services are administered within the authority of the Health and Human Services Commission (HHSC).[19]  The

---

[17]  TEX. LOCAL GOV'T CODE § 133.102.

[18]  TEX. HUM. RES. CODE §§ 111.052(a), 111.060(a). *See also id.* § 111.001 ("It is the policy of the State of Texas to provide rehabilitation and related services to eligible individuals with disabilities so that they may prepare for and engage in a gainful occupation or achieve maximum personal independence.").

[19]  At the time of appellant's trial, the rehabilitation services were administered by the Department of Assistive and Rehabilitative Services (DARS), a department within HHSC. *See* TEX. GOV'T CODE § 531.001(4)(C) (Vernon's 2012) ("Health and human services agencies" include the . . . Department of Assistive and Rehabilitative Services"); TEX. HUM . RES. CODE § 117.071 (Vernon's 2013) (DARS responsible for providing and coordinating programs providing rehabilitation services); Acts 2003, ch. 198, § 1.21(a)(1) (providing for the transfer to DARS of "all powers, duties, functions, programs, and activities of the Texas Rehabilitation Commission"); TEX. HUM. RES. CODE §§ 111.052(a), 111.060(a) (Vernon's 2013) (referring to the "commission"); *id.* § 111.002(1) (defining "commission" to be the "Texas Rehabilitation Commission").  Legislation passed in 2015 transferred the responsibility for these services directly to HHSC.  *See* TEX. HUM . RES. CODE § 111.052 (referring to the "priorities established by the executive commissioner"); *id.* § 111.002(2-b) (defining "executive commissioner" as "the executive commissioner of the Health and Human Services Commission").  *See also* http://www.dars.state.tx.us/ ("As of September 1, 2016, programs and services previously administered or delivered by the former Texas Department of Assistive and Rehabilitative Services (DARS) have been transferred by the Texas Legislature to the Texas Workforce Commission or the Texas Health and Human Services Commission"; listing

statute does not, on its face, appear to serve a legitimate criminal justice purpose. Nothing in the statute that describes the functions of HHSC restricts its mission to, or even mentions, anything relating to criminal justice.[20] HHSC does not, for example, provide rehabilitation services only to victims of crime.[21] Nor is there any criminal justice restriction imposed on the use of the funds contained in the comprehensive rehabilitation account[22] or on the use of funds transferred to that account from the consolidated fee collected as court costs.[23] No criminal justice purpose is even mentioned.

The State contends that, under § 117.081 of the Human Resources Code, comprehensive rehabilitation services assist persons with "traumatic brain or spinal cord injuries" and that such injuries could easily be caused by a crime.[24] The State also argues that, under § 772.0063 of the Government Code, the governor is charged with establishing a comprehensive rehabilitation treatment program for child victims of sex trafficking.[25] It is true that victims of crime may avail themselves of the services of HHSC if they otherwise qualify, but that does not make a general

---

comprehensive rehabilitation with HHSC). This change in the administrator of the account has no effect on the legal issues before us, so we need not determine whether this case is governed by current law or by the law in effect at the time of appellant's trial.

[20] *See id.* §§ 111.002(3), (5), 111.052.

[21] We provide this example only by way of illustration. Another example would be providing rehabilitative services to convicted persons. And of course, HHSC provides many other types of services than the rehabilitation services discussed here.

[22] *See id.* § 111.060.

[23] *See* TEX. LOCAL GOV'T CODE § 133.102.

[24] *See* TEX. HUM. RES. CODE § 117.081.

[25] *See* TEX. GOV'T CODE § 772.0063(a).

appropriation of money to HHSC an allocation to be expended for a legitimate criminal justice purpose.[26] And while the court of appeals was correct in saying that interconnected statutes direct the use of the money appropriated to HHSC, the uses to which the money is directed do not relate to the criminal justice system. Consequently, we conclude that the allocation of funds to the "comprehensive rehabilitation" account does not qualify as an allocation of funds "to be expended for legitimate criminal justice purposes."[27] To the extent that § 133.102 allocates funds to the "comprehensive rehabilitation" account, it is facially unconstitutional in violation of the Separation of Powers provision of the Texas Constitution.

### D. "Abused Children's Counseling" Account

---

[26] In echoing the State's argument, the dissents misunderstand the holding of *Peraza*. The issue is whether the fee in question is a court cost (which is allowed) or a tax (which is unconstitutional). That issue must be determined at the time the fee is *collected*, not at the time the money is spent. Accordingly, *Peraza* requires that the relevant statutes direct that the funds be used for something that is a legitimate criminal justice purpose; it is not enough that some of the funds may ultimately benefit someone who has some connection with the criminal justice system. Under the dissents' (and the State's) reasoning, a fee to be paid for children's health insurance, without any other restriction, would be "for a criminal justice purpose" because someone who is a victim of a crime might receive medical services paid for by that insurance. Or a fee for the purpose of funding college student loans that would be available to anyone would be "for a criminal justice purpose" because someone who was a victim of a crime (or a convict, for that matter) could apply for such a loan. Under such a view, there would be no limits to the types of fees the legislature could require the courts to collect, and courts would effectively be tax gatherers.

Because the constitutional infirmity in this case is the statute's failure to *direct* the funds to be used in a manner that would make it a court cost (i.e., for something that is a criminal justice purpose), the statute operates unconstitutionally every time the fee is collected, making the statute unconstitutional on its face. The fact that some of the money collected may ultimately be spent on something that would be a legitimate criminal justice purpose if the legislature had directed its use in that fashion is not sufficient to create a constitutional application of the statute because the actual spending of the money is not what makes a fee a court cost.

[27] We note, but need not address the effect of, a provision that requires certain unexpended funds in the "comprehensive rehabilitation account" to revert to the general revenue fund. *See* TEX. HUM. RES. CODE § 111.060(b).

Before 1995, Article 37.072 of the Code of Criminal Procedure required the collection of a fee that would be remitted to an "abused children's counseling" account that channeled money to a program for counseling abused children under Education Code § 11.11.[28] In 1995, Education Code § 11.11 was repealed,[29] and Article 37.072 was revised to direct the proceeds from the fees to the "foundation school" fund.[30] At that point, no provision existed for channeling proceeds from fees to the "abused children's counseling" account, and no program existed to receive money from that account. In 1997, the legislature repealed Article 37.072[31] and enacted Article 102.075, which required the collection of a fee as court costs and allocated the proceeds to various accounts.[32] One of these accounts was the "abused children's counseling" account,[33] but no program was created for which the account would be used. Article 102.075 was repealed effective January 1, 2004,[34] and the provision for allocating funds to the "abused children's counseling" account was moved to its current place in Local Government Code § 133.102.[35] The Comptroller's website says that the

---

[28] *See* TEX. CODE CRIM. PROC. art. 37.072, § 3 (West 1992); TEX. EDUC. CODE § 11.11 (LEXIS 1994). Article 42.151 gave instructions regarding when a defendant would pay the fee. *See* TEX. CODE CRIM. PROC. art. 42.151 (West 1992).

[29] *See* TEX. EDUC. CODE § 11.11 (LEXIS 1996).

[30] *See* TEX. CODE CRIM. PROC. 37.072, § 3 (West 1996).

[31] *See* TEX. CODE CRIM. PROC. art. 37.072 (West 1998).

[32] *See id.* art. 102.075(a), (h).

[33] *See id.* art. 102.075(h).

[34] *See* TEX. CODE CRIM. PROC. art 102.075 (West 2004).

[35] *See* TEX. LOCAL GOV'T CODE § 133.102 (LEXIS 2004). Article 42.151 remains unchanged to this day and continues to refer to Article 37.072, even though the current version of Article 37.072 does not set forth any fees that would be the subject of Article 42.151's instructions. *See* TEX. CODE CRIM. PROC. arts. 37.072, 42.151.

money collected for abused children's counseling is deposited in the General Revenue Fund.[36]

The result of these legislative actions is that, although the "abused children's counseling" account originally funded a program for abused children's counseling, the program to which the funds are directed no longer exists and the funds revert to the General Revenue Fund. We cannot uphold the constitutionality of funding this account through court costs on the basis of its name or its former use when all the funds in the account go to general revenue. Consequently, the allocation of funds to the "abused children's counseling" account does not currently qualify as an allocation of funds "to be expended for legitimate criminal justice purposes." To the extent that § 133.102 allocates funds to the "abused children's counseling" account, it is facially unconstitutional in violation of the Separation of Powers provision of the Texas Constitution.

### E. Severability

Appellant claims that there is no savings or severability clause in § 133.102 and that the invalidation of part of the statute requires that the entire statute be held unconstitutional. However, it is possible for only a portion of a statute to be facially unconstitutional, and if that is the case, the court should invalidate only that portion, leaving the remainder of the statute intact, as long as doing

---

[36] Texas Comptroller Manual of Accounts - Fiscal 2017, Revenue Object 3704 – Court Costs – Abused Children's Counseling, webpage:

https://fmcpa.cpa.state.tx.us/fiscalmoa/rev.jsp?num=3704&id=13048.

One of the dissents suggests that we decide the constitutionality of the portion of the fee devoted to the abused children's counseling account on the basis of information we observed on a website. The dissent is incorrect. The fee is unconstitutional because the funds are not directed by statute to be used for a criminal justice purpose. *See supra* at n.26. The comptroller's website simply illustrates the consequences of the legislature's lack of direction. We also observe that the dissent has not suggested that the content on the comptroller's website is inaccurate.

so would be feasible.[37]  Severance is feasible as long as the valid and invalid provisions are not so inextricably intertwined that a severance would render the statute incomplete or contrary to legislative intent.[38]

Subsection (e) of the statute instructs the Comptroller to allocate from the consolidated fee to the accounts "the same amount of money the account or fund would have received if the court costs for the accounts and funds had been collected and reported separately."[39]  Given that language and our general rule of severing unconstitutional parts of a statute when feasible, we conclude that the proper remedy is to sever the invalid provisions.  The valid and invalid provisions are not inextricably entwined, and severance would implement the legislative intent to the greatest extent possible.  The fee should be reduced pro rata, according to the percentage allocated to the impermissible accounts.

The combined percentage attributable to the "abused children's counseling" and "comprehensive rehabilitation" accounts under the statute is 9.8306 percent.  That percentage of the $133 fee in appellant's case is $13.07.  Subtracting that amount from the $133 fee yields a fee of $119.93.

### F. Retroactivity

We have sometimes found it appropriate to address the retroactivity implications of a holding

---

[37]  *Ex parte Perry*, 483 S.W.3d 884, 903 (Tex. Crim. App. 2016).

[38]  *Id.*

[39]  *See supra* at part II.B.

at the time of the holding.[40]   Retroactivity principles are implicated if the holding of a court

announces a "new" rule.[41]   When the issue is one of statutory interpretation, a rule is new only when

it is a "clear break" with the past.[42]   But because a statute is presumed to be constitutional until it is

determined otherwise,[43] we conclude that declaring a statute unconstitutional on its face is a "new"

rule sufficient to invoke a retroactivity analysis.

We have recognized four types of retroactivity approaches: (1) *pure prospectivity* - applying

the new rule to those cases tried after the effective date of the opinion announcing the new rule; (2)

*limited prospectivity* - applying the new rule in situation (1) and to the parties in the case in which

the new rule is announced; (3) *limited retrospectivity* - applying the new rule in situations (1) and

(2) and to all cases then pending on direct review or not yet final; and (4) *pure retrospectivity* -

applying the new rule to cases in situations (1), (2), and (3)  and to cases pending on collateral

review.[44]   This is not, however, an exhaustive list of approaches to retroactivity.

*Griffith v. Kentucky* articulated the retroactivity rule for federal constitutional errors in

criminal cases, and it is one of limited retrospectivity: a newly announced federal constitutional rule

for conducting criminal prosecutions must be retroactively applied to all cases pending on direct

---

[40]  *Geesa v. State*, 820 S.W.2d 154, 163 (Tex. Crim. App. 1991), *overruled on other grounds by*, *Paulson v. State*, 28 S.W.3d 570 (Tex. Crim. App. 2000) ("[T]he question of whether a decision announcing a new rule should be given prospective or retroactive effect should be faced at the time of that decision.") (omitting quotation marks and brackets from *Geesa*).  *But see Taylor v. State*, 10 S.W.3d 673, 676 (Tex. Crim. App. 2000) (addressing the retroactivity of the holding in a prior case).

[41]  *Taylor*, 10 S.W.3d at 681.

[42]  *Id.* at 682.

[43]  *Karenev v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009).

[44]  *Geesa* 820 S.W.2d at 163 n.13.

review or not yet final when the rule was announced.[45] The *Griffith* retroactivity rule is binding upon the states when federal constitutional errors are involved but does not bind the states on matters of state law.[46] Because our current holding is based on the Separation of Powers provision of the Texas Constitution, we are free to decide what retroactivity rule applies.

For a new construction of a state statute, we have adopted the balancing analysis in *Stovall v. Denno*,[47] which requires considering (1) the purpose to be served by the new standards, (2) the extent of reliance by law enforcement authorities on the old standards, and (3) the effect a retroactive application of the new standards would have on the administration of justice.[48] The outcome of this balancing test will generally turn on whether the new rule impacts the truth-finding function or is merely procedural.[49] New state non-constitutional rules that impact the truth-finding function are usually retroactive, at least to cases pending on direct appeal or not yet final, while rules that do not impact the truth-finding function are usually accorded limited prospectivity.[50] Exceptions to this general principle can occur if the reliance or "administration of justice" factors in the *Stovall* inquiry are unusually high for a truth-finding rule or insignificant for a procedural rule.[51]

We have not yet determined what retroactivity analysis should apply to new rules of state

---

[45] 479 U.S. 314, 328 (1987).

[46] *Taylor v. State*, 10 S.W.3d 673, 679 (Tex. Crim. App. 2000).

[47] 388 U.S. 293 (1967).

[48] *Taylor*, 10 S.W.3d at 678, 681.

[49] *Id.* at 682-83.

[50] *Id.*

[51] *Id.* at 683.

constitutional origin.[52]  We conclude that, at least when the new state constitutional rule does not involve a personal right of the defendant, a *Stovall* analysis is appropriate.  That is the case here because the separation of powers violation is the violation of a right of the courts, not of any personal right of the defendant.  We turn then, to the *Stovall* test.

What costs a defendant pays has nothing to do with the truth-finding function of a criminal trial.  It is a financial burden on the defendant, but there is nothing inherently inappropriate about making the defendant pay a fee as a result of being convicted or otherwise suffering an adverse outcome in criminal proceedings.  Consequently, the purpose factor weighs against retroactivity. We also conclude that the State's reliance interests are heavy, especially for money collected for comprehensive rehabilitation, a specific state program.  Although less heavy, the State's reliance interest in having a revenue stream from the abused children's counseling account is significant.  The reliance factor, therefore, weighs against retroactivity.  We also find that imposing our separation of powers holding retroactively could create large administrative burdens on court clerks throughout the state, so the administration-of-justice factor weighs against retroactivity.

We do, however, recognize the need to reward parties who persuade a court to overturn an unconstitutional statute,[53] and we conclude that applying the new constitutional rule to the parties in the present case is necessary, but not quite sufficient to satisfy that need.  Other defendants have challenged one or both of the fees at issue in petitions for discretionary review before this Court and

---

[52]  *See id.* at 681 (holding that a *Stovall* analysis applies to new rules of non-constitutional origin).

[53]  *See id.* at 682 ("[R]etroactive application of the rule to the parties in the announcing case is a necessary price to pay for a system that encourages parties to challenge bad rules: there is a need to reward the party . . . responsible for convincing the Court to" overturn a bad rule.) (internal quotation marks omitted).

can be said to have exerted some influence in procuring our current holding. Therefore, we will also apply our constitutional holding in this case to any defendant who has raised the appropriate claim in a petition for discretionary review before the date of this opinion, if that petition is still pending on the date of this opinion and if the claim would otherwise be properly before us on discretionary review. Otherwise, our holding will apply prospectively to trials that end after the date the mandate in the present case issues.[54]

## G. Disposition

We conclude that § 133.102 is facially unconstitutional to the extent it collects and allocates funds to the comprehensive rehabilitation and abused children's counseling accounts. We reverse the judgment of the court of appeals with respect to the issue of court costs, and we modify the trial court's judgment to change the $133 consolidated fee to $119.93.

Delivered: March 8, 2017

Publish

---

[54] If the Legislature redirects the funds to a legitimate criminal justice purpose, the entire consolidated court cost may be collected. If that occurs before mandate issues, the only cases that will be affected by this opinion will be the few that are now pending in this Court and are appropriate for relief.