# NO. 12-16-00329-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JOHN DOUGLAS SMITH,*<br>*APPELLANT* | § | *APPEAL FROM THE 7TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *SMITH COUNTY, TEXAS* |

---

### *MEMORANDUM OPINION*

John Douglas Smith appeals his conviction for murder. In two issues, Appellant contends the evidence is legally insufficient to support his conviction and that the trial court awarded unconstitutional court costs. We affirm.

### BACKGROUND

Appellant was employed as the manager and caretaker for the Sunset Valley trailer park in Smith County, Texas. In December 2015, Tasha Earnest became delinquent in her rent and was served with an eviction notice. She reached an agreement with the owner, Willie Hardy, to move out of her trailer and into Francisco Douglas's[1] trailer by December 16. However, Earnest fell ill prior to her move-out date and spent four days in the hospital. On December 18, Earnest moved her belongings to Douglas's trailer and was cleaning hers. When she finished cleaning the trailer, Earnest went to Appellant's residence to tell him that it was ready for inspection and that he could get the keys to the trailer. Appellant told Earnest to get off of his property and stated that "nobody summons me to do anything." When Earnest told Douglas what occurred,

---

[1] In the indictment, Francisco Douglas was also referred to as "Frank Douglas."

Douglas stormed out of the trailer because Hardy had told them to give the keys to Appellant when Earnest finished moving out.

Douglas walked to Appellant's residence. When Douglas stepped onto the porch steps, Appellant pointed a shotgun at him and told him to get off of the property. Appellant then shot Douglas. Douglas was found dead in Appellant's yard. Earnest fled, called 9-1-1, and told the neighbors what happened.

Appellant was arrested by the Smith County Sheriff's Department and subsequently charged by indictment with murder. At trial, Appellant claimed he acted in self-defense. The jury found Appellant "guilty" and sentenced him to imprisonment for fifty years. This appeal followed.

## SUFFICIENCY OF THE EVIDENCE

In his first issue, Appellant contends the evidence is legally insufficient to support a finding beyond a reasonable doubt that he was not acting in self-defense.

### Standard of Review and Governing Law

The due process guarantee of the Fourteenth Amendment requires that a conviction be supported by legally sufficient evidence. *See Jackson v. Virginia*, 443 U.S. 307, 315-16, 99 S. Ct. 2781, 2786-87, 61 L. Ed. 2d 560 (1979); *Brooks v. State*, 323 S.W.3d 893, 917 (Tex. Crim. App. 2010) (Cochran, J., concurring). The issue of self-defense is a fact issue to be determined by the jury, and a jury's verdict of guilt is an implicit finding that it rejected a defendant's self-defense theory. *Saxton v. State*, 804 S.W.2d 910, 913-14 (Tex. Crim. App. 1991). The jury's implicit rejection of a defendant's self-defense theory must be supported by legally sufficient evidence. *Id.* at 914. In reviewing the sufficiency of the evidence to support the jury's rejection of self-defense, we examine all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense and could have found against the defendant on the self-defense issue beyond a reasonable doubt. *Id.*

A person commits the offense of murder if he intentionally or knowingly causes the death of an individual. TEX. PENAL CODE ANN. § 19.02(b)(1) (West 2011). A person acts in self-defense in using force against another when and to the degree he reasonably believes the force is necessary to protect himself from the other's use or attempted use of unlawful force. *Id.*

2

§ 9.31(a) (West 2011). A "reasonable belief" is that which "would be held by an ordinary and prudent man in the same circumstances as the actor." *Id*. § 1.07(a)(42) (West Supp. 2016). The use of force is not justified if the actor is responding to force that he himself provoked, unless the actor abandons the encounter and the other nevertheless continues or attempts to use unlawful force against the actor. *Id*. § 9.31(b)(4) (West 2011). The Texas Penal Code justification for self-defense focuses on the existence of some necessity, the circumstances under which the force was used, the degree of force used, and the type of conduct against which the force was used. *Kelley v. State*, 968 S.W.2d 395, 399 (Tex. App.—Tyler 1998, no pet.). The amount of force used must be in proportion to the force encountered. *Id.* The use of deadly force is justified if the use of force is justified under section 9.31 and the actor reasonably believes deadly force is necessary to protect himself from the other's use or attempted use of unlawful deadly force. TEX. PENAL CODE ANN. § 9.32(a) (West 2011).

When a defendant raises self-defense, he bears the burden of producing some evidence to support his defense. *See **Zuliani v. State***, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003). Once the defendant produces some evidence supporting his defense, the state then bears the burden of persuasion to "disprove the raised defense." *Id*. The burden of persuasion does not require the production of evidence; it requires only that the state prove its case beyond a reasonable doubt. *Id*. Moreover, "[d]efensive evidence which is merely consistent with the physical evidence at the scene of the alleged offense will not render the [s]tate's evidence insufficient since the credibility determination of such evidence is solely within the jury's province[,] and the jury is free to accept or reject the defensive evidence." *Saxton*, 804 S.W.2d at 914. When the evidence is conflicting, we presume that the fact finder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

**Analysis**

On appeal, Appellant contends that the evidence is insufficient to support the jury's implicit rejection of his self-defense theory.

In this case, the jury heard two different versions of events. According to Appellant, he and Douglas "had words" earlier in the day regarding "a supposed insult that had been paid to [Douglas's] wife by some Mexicans." When Douglas returned to Appellant's property that afternoon, Douglas's demeanor caused Appellant to immediately realize that there would be a

problem and he "started looking for avenues in which [he] needed to pursue to handle" it. Appellant testified that he had been on his porch treating his shotgun for rust but decided to put the gun inside when he saw Douglas approaching. However, he loaded the gun before putting it inside the house. While Appellant was loading the gun, Douglas arrived on Appellant's porch and Appellant told him to leave. According to Appellant, Douglas then "bounded" up the steps and charged at Appellant. Douglas grabbed the barrel of the shotgun and Appellant began yelling, "Stop it, Frank! Stop it!" Appellant testified that Douglas struck him with his forearm and fist "like a hammer." According to Appellant, the men struggled over the gun, with each one exerting some control over it at various points, although Douglas never gained full control. He also testified that the encounter took approximately thirty seconds. Appellant testified that the gun fired when Douglas twisted it in his hands and that he did not intentionally shoot Douglas. Appellant testified that Douglas's actions left him bruised after the encounter; however, he did not have any pictures of the bruises.

Contrary to Appellant's account, Earnest testified that the victim and Appellant did not struggle over Appellant's shotgun. Earnest testified that Douglas walked onto Appellant's property to turn in the keys to Earnest's trailer. Appellant grabbed his shotgun and told Douglas to leave the property or he was going to shoot. According to Earnest, Appellant did not give this warning until Douglas was on Appellant's porch steps and a shot was fired almost immediately after the warning. She further testified that Douglas was not armed and his hands were at his sides when he was shot.

Earnest's version of events was corroborated by several witnesses. Both Smith County crime scene investigator Travis Breazeale and paramedic Dennis Suiter testified that Douglas was lying facedown and no weapons were found near or around him. Gary Tucker, a resident of the park, also testified that Douglas was lying facedown in Appellant's yard when he got home that afternoon. Detective Noel Martin with the Smith County's Sheriff's Department testified that Douglas was shot at close range because the shotgun shell had not separated when it impacted Douglas. Martin testified that the gun's muzzle was between six and eighteen inches from Douglas when he was shot. Breazeale also testified that the shotgun was within three feet of Douglas when the shot was fired. He further stated that Douglas did not have the type of blood splatter on his arms or hands that would have been consistent with reaching for the shotgun. In addition, there were no identifiable fingerprints on the gun's barrel.

4

Wallace Burkeen, a park resident, and Humberto Douglas, the victim's brother, each stated that they entered Appellant's yard to see if the victim was still alive. When they attempted to do so, Appellant grabbed his shotgun and threatened to shoot them if they did not leave his property.

Breazeale testified that Appellant did not appear to have sustained any scratches, bruises, abrasions, black eyes, or other injuries during the encounter. And Sergeant DeWayne Gray of the Smith County Sheriff's Department testified that Appellant claimed to not need medical attention when he was arrested. Detective Nikki Keegan, also with the Smith County Sheriff's Department, testified that Appellant did not allege that he acted in self-defense when he was interviewed following his arrest. The jury also heard Appellant's 9-1-1 call in which he simply stated that he had shot someone and did not assert that it was done in self-defense.

As sole judge of the weight and credibility of the evidence, the jury was entitled to choose which version of the facts to believe and, in doing so, could resolve any inconsistencies either for or against Appellant. *See Clayton*, 235 S.W.3d at 778; *see also Saxton*, 804 S.W.2d at 914. Based on the testimony presented, the jury could have determined that Appellant did not engage in a struggle with Douglas, was not responding to the use of deadly force, and was the aggressor on the day of the shooting. Accordingly, the jury was entitled to reject Appellant's contention of self-defense and could reasonably conclude that Appellant shot Douglas when such force was not immediately necessary to protect himself from Douglas. *See* TEX. PENAL CODE ANN. §§ 9.31(a), 9.32(a). Viewing the evidence in the light most favorable to the verdict, we conclude that a rational jury could have found against Appellant on his self-defense claim beyond a reasonable doubt. *See Saxton*, 804 S.W.2d at 914. Because the evidence is sufficient to support the jury's implicit rejection of Appellant's self-defense claim, we overrule Appellant's first issue.

**COURT COSTS**

In his second issue, Appellant argues that this Court should modify the trial court's judgment to remove unconstitutional court costs.

**Applicable Law**

The imposition of court costs upon a criminal defendant is a "nonpunitive recoupment of the costs of judicial resources expended in connection with the trial of the case." *Johnson v. State*, 423 S.W.3d 385, 390 (Tex. Crim. App. 2014). The consolidated fee statute requires a

defendant to pay a court cost of $133 on conviction of a felony. TEX. LOC. GOV'T CODE ANN. § 133.102(a)(1) (West Supp. 2016). The money received is divided among a variety of state government accounts according to percentages dictated by the statute. *See id.* § 133.102(e) (West Supp. 2016); *Salinas v. State*, No. PD–0170–16, 2017 WL 915525, at *1 (Tex. Crim. App. Mar. 8, 2017). The court of criminal appeals has held the statute unconstitutional with respect to two of these accounts: an account for "abused children's counseling" and an account for "comprehensive rehabilitation." *See Salinas*, 2017 WL 915525, at *1. As a result, the court held that any fee assessed pursuant to the statute must be reduced pro rata to eliminate the percentage of the fee associated with these accounts. *Id.* The court further held that its holding applies only to (1) a defendant who raised the appropriate claim in a petition for discretionary review before the date of the court's opinion, if the petition is still pending on that date and the claim would otherwise be properly before the court on discretionary review, or (2) a defendant whose trial ends after the mandate in *Salinas* issues. *Id.* at *6.

## Analysis

Here, the final judgment shows a court cost assessment of $329. The bill of costs shows that the $133 consolidated court cost fee was assessed. However, because (1) no petition for discretionary review is pending on Appellant's claim, and (2) the proceedings in the trial court ended on January 10, 2017—prior to the court of criminal appeals's decision in *Salinas*—the court's holding in that case does not apply. *See id.* Accordingly, we overrule Appellant's second issue.

### DISPOSITION

Having overruled Appellant's two issues, we *affirm* the trial court's judgment.

JAMES T. WORTHEN
Chief Justice

Opinion delivered September 20, 2017.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**SEPTEMBER 20, 2017**

**NO. 12-16-00329-CR**

**JOHN DOUGLAS SMITH,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 7th District Court

of Smith County, Texas (Tr.Ct.No. 007-0157-16)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*