ACCEPTED
01-16-00768-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
5/24/2018 11:00 AM
CHRISTOPHER PRINE
CLERK

**No. 01-16-00768-CR**

In the Court of Appeals
For the First District of Texas
At Houston

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

5/24/2018 11:00:14 AM

CHRISTOPHER A. PRINE
Clerk

——————◆——————

**No. 1487627**
In the 337th District Court
Of Harris County, Texas

——————◆——————

**Ruben Lee Allen**
*Appellant*

*v.*

**The State of Texas**
*Appellee*

——————◆——————

**State's Supplemental Brief for *en banc* Reconsideration**

——————◆——————

**Clint Morgan**
Assistant District Attorney
Harris County, Texas
State Bar No. 24071454
morgan_clinton@dao.hctx.net

1201 Franklin St., Suite 600
Houston, Texas 77002
Telephone: 713 274 5826

**Kim Ogg**
District Attorney
Harris County, Texas

**Amanda Petroff**
**John Wakefield**
Assistant District Attorneys
Harris County, Texas

# Table of Contents

Table of Contents .............................................................1

Index of Authorities .........................................................2

Purpose of this Brief .........................................................1

Costs: Recoupment vs. Funding ..........................................2

Separation of Powers and Original Meaning ...........................3

Court Costs in 1879 .........................................................5

Recouped Costs Seem to Have Gone to the General Fund ...........7

Conclusion ...................................................................11

Certificate of Compliance and Service ..................................12

i

# Index of Authorities

## Cases

*Eldred v. Ashcroft*
  537 U.S. 186 (2003)...................................................................................4

*Myers v. United States*
  272 U.S. 52 (1926)....................................................................................5

*Salinas v. State*
  523 S.W.3d 103 (Tex. Crim. App. 2017)..................................................2

*State v. Womack*
  17 Tex. 237 (1856) ...................................................................................6

## Statutes

Oliver Cromwell Hartley
  *Digest of the Laws of Texas* (1850) .....................................................5, 8

TEX. CODE CRIM. PROC. art 1099 (1879)..................................................9

TEX. CODE CRIM. PROC. art. 1018 (1925)..................................................8

TEX. CODE CRIM. PROC. art. 1018 (1948)..................................................8

TEX. CODE CRIM. PROC. art. 1059 (1879)..................................................9

TEX. CODE CRIM. PROC. art. 1061 (1879)..................................................8

TEX. CODE CRIM. PROC. art. 1091 (1895)..................................................8

TEX. CODE CRIM. PROC. art. 1096 (1879)..................................................9

TEX. CODE CRIM. PROC. art. 1136 (1911)..................................................8

TEX. CODE CRIM. PROC. art. 956 (1856)....................................................8

TEX. REV. CIV. STAT. art. 2769 (1879) ......................................................8

## Constitutional Provisions

REP. OF TEXAS CONST. OF 1836, Art. 1 § 1 ..............................................3

TEX. CONST. art. II § 1 ...................................................................4

TEX. CONST. OF 1845 art. II § 1 .......................................................4

TEX. CONST. OF 1861 art. II § 1 .......................................................4

TEX. CONST. OF 1866 art. II § 1 .......................................................4

TEX. CONST. OF 1869 art. II § 1 .......................................................4

## Other Sources

Federal Reserve Bank of Minneapolis
  *Consumer Price Index (Estimate) 1800-,*
   *available at* https://minneapolisfed.org/community/financial-and-
   economic-education/cpi-calculator-information/consumer-price-index-
   1800                                                                    5

## Purpose of this Brief

On original submission, this Court held that a court cost assessed against the appellant to recoup the cost of summoning witnesses was facially unconstitutional because the statute did not direct the money to any particular criminal-justice fund. In December 2017, the State's filed a motion for *en banc* reconsideration that provided statutory citations showing the money for this court cost is actually directed to the officer who summoned the witnesses.

In April, 2018, the State's appellate counsel had oral argument before a panel of the Fourteenth Court regarding the constitutionality of the court costs that recouped money for the clerk's and prosecutor's services.[1] As a result of that argument the State's appellate counsel conducted additional research into the original meaning of the Texas constitution as it relates to court costs. The State's appellate counsel has submitted that research to two panels of the Fourteenth Court that are presently considering the matter. As the issues are the same as in this case, it seems appropriate to submit that research to this Court as well.

---

[1] *Alfred Moliere v. State*, 14-17-00594-CR.

1

## Costs: Recoupment vs. Funding

On original submission in *Johnson v. State*, ___ S.W.3d ___, No. 14-16-00658-CR, 2018 WL 1476275, at *4 (Tex. App.—Houston [14th Dist] March 27, 2018, no pet. h.),[2] the Fourteenth Court hit on a very important question in the current spate of court-cost litigation. Texas has always assessed court costs against convicted defendants to recoup the government's expenses from the prosecution. However, in recent decades Texas has also assessed court costs as funding mechanisms for various criminal-justice projects. Recent Court of Criminal Appeals cases, which require appellate courts to rummage through numerous statutes to determine where court-cost money goes, deal with costs that are assessed as funding mechanisms. Do the requirements of these recent cases extend to the older, recoupment court costs?

On original submission in *Johnson*, the Fourteenth Court answered this question in the affirmative. On original submission in this case, this Court did so as well, though it did not explicitly treat the matter as an open question as did the *Johnson* court. Both courts based their approach on the Court of Criminal Appeals's most recent court-cost case, *Salinas v. State*, 523 S.W.3d 103 (Tex. Crim. App. 2017). In *Salinas*, the court analyzed a

---

[2] The State has moved for rehearing in *Johnson* based, in part, on the research contained in this brief. That motion is pending.

funding court cost, tracked down the designated fund to which money was supposed to go, saw that the fund no longer existed, and then declared the cost a "tax" that violated the separation-of-powers provision of the state constitution.

The State believes the application of *Salinas* to recoupment court costs is a reasonable reading of *Salinas*, but it is not a required reading of *Salinas*. By its barest terms *Salinas* does not reach recoupment court costs. The State believes this Court should read *Salinas* in the context of the original meaning of the Texas Constitution's separation-of-powers provision. A review of the court-cost scheme at and around the time the current Texas constitution was adopted shows that those Texans who drafted and ratified the constitution believed it acceptable for courts to 1) recoup from a convicted defendant the costs incurred in prosecuting him, and 2) deposit the money in an unrestricted account.

### Separation of Powers and Original Meaning

The current separation-of-powers provision has appeared in the same location of every Texas constitution since statehood,[3] remaining unchanged since 1845:

---

[3] The constitution of the Republic contained a shorter separation of powers provision: "The powers of this Government shall be divided into three departments, *viz*: Legislative,

> The powers of the government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy; to wit: Those which are legislative to one, those which are executive to another, and those which are judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.

TEX. CONST. art. II § 1; s*ee* TEX. CONST. OF 1845 art. II § 1; TEX. CONST. OF 1861 art. II § 1; TEX. CONST. OF 1866 art. II § 1; TEX. CONST. OF 1869 art. II § 1.[4]

The State believes that, when looking to give this section of the constitution the effect its drafters and ratifiers intended, it makes sense to look at the laws of that time period, as those laws are likely to reflect what the drafters and ratifiers believed the constitution allowed. *Cf. Eldred v. Ashcroft,* 537 U.S. 186, 213 (2003) (federal Supreme Court "has repeatedly laid down the principle that a contemporaneous legislative exposition of the Constitution when the founders of our Government and framers of our Constitution were actively participating in public affairs, acquiesced in for a

---

Executive and Judicial, which shall remain forever separate and distinct." REP. OF TEXAS CONST. OF 1836, Art. 1 § 1.

[4] The University of Texas at Austin's Tarleton Law Library has a convenient archive of all Texas constitutions available at https://tarltonapps.law.utexas.edu/constitutions/ (last accessed May 24, 2018).

long term of years, fixes the construction to be given [the Constitution's] provisions.") (quoting *Myers v. United States*, 272 U.S. 52, 175 (1926)). This should be particularly true where constitutional provisions and statutes kept being readopted over the course of decades.

## Court Costs in 1879

Both in the Republic and in the early days of statehood, most of the public servants involved in a criminal prosecution were paid on a fee basis rather than with a salary. *See, e.g.,* Oliver Cromwell Hartley, *Digest of the Laws of Texas* (1850) (hereinafter "Hartley), Art. 1358 (1848 law providing that district attorneys be paid $20 for every felony conviction, $15 for every gambling conviction, and $10 for all other convictions, [5] "which fees shall be taxed in the bill of costs against the defendant; but in no case shall be paid by the State."). The Congress, and, later, the Legislature passed laws requiring convicted defendants (except in capital cases) to reimburse the government for any costs it had paid during the proceedings. Hartley, Arts.

---

[5] The Minneapolis Federal Reserve Bank has estimates of the consumer price index going back to 1800. *See* Federal Reserve Bank of Minneapolis, *Consumer Price Index (Estimate) 1800-, available at* https://minneapolisfed.org/community/financial-and-economic-education/cpi-calculator-information/consumer-price-index-1800 (last accessed May 24, 2018). Though it is only an estimate, converting 1848 dollars to 2017 dollars requires multiplying the former by 28.2. At the time, the costs accessed against the defendant were meant to cover essentially the entire cost of the prosecution. Today's fees — *e.g.* a $40 jury fee, where other statutes require each juror to be paid $40 per day — do not come remotely close to the actual costs.

400 (1836 law requiring as much), 1371 (1848 law requiring as much). The First Congress explicitly provided for imprisonment for failure to pay these fees, unless it "appear[ed] to the court that the person so committed hath no estate or means to pay such fine and costs," in which case the court was to discharge the defendant and the debt. Hartley, Art. 401; *see State v. Womack*, 17 Tex. 237, 239 (1856) (noting in passing that power of judge to order convicted misdemeanant imprisoned until $5 jury fee was paid "cannot be questioned").

Beginning with the first codification in 1856, and running until the most recent major revision in 1965, the Code of Criminal Procedure established three categories of court costs: Those paid by the state (*i.e.* the state government in Austin), those paid by the county, and those paid by the defendant. As often happens, these code sections started as very simple, but grew more complex as the years went on. Here, the State will discuss the version in the 1879 Code, which most closely reflects the laws at the time the current constitution was adopted. These sections were very similar to those in the 1856 Code.

The state was responsible for paying the attorney general for each affirmed appeal and *habeas* case, the clerk of the appellate court for each appeal, the district or county attorney for each conviction, and several fees to

the sheriff related to summoning witnesses and jurors and conveying prisoners. TEX. CODE CRIM. PROC. arts. 1049-1061 (1879).[6] The county was responsible for paying for the upkeep of prisoners, paying and supporting jurors (grand and petit), paying the county judge for any criminal cases he tried, and paying for the costs of inquests on dead bodies. TEX. CODE CRIM. PROC. art. 1062-86 (1879). The defendant was responsible for paying the attorney general and clerk of the court of appeals for each affirmed or dismissed appeal, paying the prosecutor's fee, paying the district clerk for various acts (*e.g.*, twenty-five cents for docketing the case), paying the sheriff for various acts (*e.g.*, fifty cents for summoning a witness, and one dollar for serving an arrest warrant), paying various fees to justices of the peace, mayors, and recorders who tried criminal cases, paying a jury fee, and paying fees to witnesses ($1.50 per day of testimony and 6 cents per mile travelled to court). TEX. CODE CRIM. PROC. art. 1087-1111 (1879).

### Recouped Costs Seem to Have Gone to the General Fund

Importantly, beginning in 1856 and running through the most recent major revision in 1965, the Code provided that, upon conviction, any fees

---

[6] The code revisions of 1879, 1895, 1911, 1925, and 1948 are available from the State Law Library's website: https://www.sll.texas.gov/library-resources/collections/ historical-texas-statutes/. The Legislative Reference Library of Texas has pdf copies of the 1856 Penal Code and Code of Criminal Procedure (*i.e.* "the Old Codes"): http://www.lrl.state.tx.us/collections/ oldcodes.cfm

paid by the state were to be charged against the defendant as part of the bill of costs. The Code never directed any of the recouped money to a particular fund, but instead stated merely that it be "paid by the officer collecting [the costs] into the Treasury of the State." TEX. CODE CRIM. PROC. art. 956 (1856); *see* TEX. CODE CRIM. PROC. art. 1061 (1879) ("shall be paid into the treasury of the state"); TEX. CODE CRIM. PROC. art. 1091 (1895) ("shall be paid into the treasury of the state"); TEX. CODE CRIM. PROC. art. 1136 (1911) ("shall be paid into the treasury of the state"); TEX. CODE CRIM. PROC. art. 1018 (1925) ("shall be paid into the State Treasury"); TEX. CODE CRIM. PROC. art. 1018 (1948) ("shall be paid into the State Treasury").

Though the State Treasurer was required to keep track of the amount of revenue derived from various sources, it appears that, at least in the mid-nineteenth century, all money received into the treasury was put into a single account. *See* Hartley, Art. 2905 (1846 law stating treasurer must keep single account "in the name of the State of Texas, in which he shall enter the amounts of all moneys, securities, and other property in the Treasury, and which may at any time be received by him"); TEX. REV. CIV. STAT. art. 2769 (1879) (same). In the section describing how the Comptroller was to make payment on claims from officers, the Code states that the funds come out of a particular "appropriation" from the Legislature, rather than a particular

8

fund, implying that the intake of money from court costs was not directly tied to the actual expenditures. TEX. CODE CRIM. PROC. art. 1059 (1879).

Though most of the recoupment court costs went to the state, one court cost in the 1879 Code functioned as little more than a general tax. For convictions in justices', mayors', or recorders' courts, defendants were to pay $10 to "the attorney who represents the state." TEX. CODE CRIM. PROC. art. 1096 (1879). A later section provided, though, that in cases where that attorney "has taken no action," the attorney would collect no fee but "a fee of five dollars shall be taxed, for the benefit of the county, instead thereof." TEX. CODE CRIM. PROC. art 1099 (1879).

The State can find no cases litigating the legality of these costs during this time period. If the question is, "During the period in which the Texas constitution was drafted and adopted, did the Legislature and people of Texas believe that the separation-of-powers provision allowed for the assessment of court costs to recoup money spent on the defendant's case?", the answer is a definite "yes." If the question is, "During that period did the Legislature and people of Texas believe that money recouped via court costs needed to be specifically earmarked for a criminal justice purposes?", the answer is: "Apparently not."

*Salinas*, by its bare terms, does not apply to recoupment costs. Applying that case's requirements to recoupment court costs would conflict with how those Texans who drafted and ratified the constitution believed court costs should work. This Court should respect that historical understanding and not apply *Salinas* to recoupment costs.

## Conclusion

The State asks this Court to grant rehearing and uphold the witness summoning fee the appellant is challenging.

KIM OGG
District Attorney
Harris County, Texas


/s/ C.A. Morgan
CLINT MORGAN
Assistant District Attorney
Harris County, Texas
1310 Prairie, Suite 500
Houston, Texas  77002
Telephone: 713 274 5826
Texas Bar No. 24071454

**Certificate of Compliance and Service**

I certify that, according to Microsoft Word, the portion of this brief for which Rule of Appellate Procedure 9.4(i)(1) requires a word count contains 2,172 words.

I also certify that I have requested that efile.txcourts.gov electronically serve a copy of this brief to:

Nicholas Mensch
nicholas.mensch@pdo.hctx.net

/s/ C.A. Morgan
**CLINT MORGAN**
Assistant District Attorney
Harris County, Texas
1310 Prairie, Suite 500
Houston, Texas  77002
Telephone: 713 274 5826
Texas Bar No. 24071454

Date: May 24, 2018