# NO. 12-17-00240-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JOSHUA SCALES,*<br>*APPELLANT* | § | *APPEAL FROM THE 114TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Joshua Scales appeals his conviction for murder. In two issues, Appellant argues that the evidence is insufficient and certain court costs are unconstitutional. We affirm.

## BACKGROUND

Appellant was charged by indictment with murder. He pleaded "not guilty," and the matter proceeded to a jury trial.

At trial, the undisputed evidence showed that Appellant's roommate Jana Lang told Jordan Ladue to go to her home in Troup to obtain some money. Tammy Dilbeck and Ladue's wife, Christina, waited in the car while Ladue went to the back of the house. Several minutes later, Appellant shot Ladue in the neck. Ladue ran to the car, where he died within minutes.

In his defense, Appellant testified that he thought Ladue was an intruder. He retrieved the gun to defend himself and accidentally shot Ladue while chasing him out of the house.

In its jury charge, the trial court included an instruction on the law regarding use of deadly force in self-defense to prevent a robbery. Ultimately, the jury found Appellant "guilty" of murder and assessed his punishment at imprisonment for thirty-five years. This appeal followed.

In Appellant's first issue, he argues that the State failed to prove his killing of Ladue was not in self-defense.

## Standard of Review and Governing Law

The due process guarantee of the Fourteenth Amendment requires that a conviction be supported by legally sufficient evidence. *See Jackson v. Virginia*, 443 U.S. 307, 315–16, 99 S. Ct. 2781, 2786–87; *Brooks v. State*, 323 S.W.3d 893, 917 (Tex. Crim. App. 2010). The issue of self-defense is a fact issue to be determined by the jury, and a jury's verdict of guilt is an implicit finding that it rejected the defendant's self-defense theory. *Saxton v. State*, 804 S.W.2d 910, 913–14 (Tex. Crim. App. 1991). Accordingly, the jury's implicit rejection of a defendant's self-defense theory must be supported by legally sufficient evidence. *Id.* at 914. In reviewing the sufficiency of the evidence to support the jury's rejection of self-defense, we examine all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense and could have found against the defendant on the self-defense issue beyond a reasonable doubt. *Id.*

When a defendant raises self-defense, he bears the burden of producing some evidence to support his defense. *See Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003) (citing *Saxton*, 804 S.W.2d at 913–14). Once the defendant produces some evidence supporting his defense, the state then bears the burden of persuasion to disprove the raised defense. *Id.* The burden of persuasion does not require the production of evidence; it requires only that the state prove its case beyond a reasonable doubt. *Id.* Moreover, "[d]efensive evidence which is merely consistent with the physical evidence at the scene of the alleged offense will not render the [s]tate's evidence insufficient since the credibility determination of such evidence is solely within the jury's province and the jury is free to accept or reject the defensive evidence." *Saxton*, 804 S.W.2d at 914. When contradictory testimonial evidence is before the jury, we defer to the jury's weight determinations. *Lancon v. State*, 253 S.W.3d 699, 706 (Tex. Crim. App. 2008).

To prove Appellant guilty of murder, the State was required to prove that he intentionally or knowingly caused Ladue's death, or that he intended to cause serious bodily injury and committed an act clearly dangerous to human life that caused Ladue's death. *See* TEX. PENAL CODE ANN. § 19.02 (West 2011).

As applicable here, a person is justified in using deadly force in self-defense when and to the degree he reasonably believes deadly force is immediately necessary to prevent the other's imminent commission of robbery. *Id.* §§ 9.31(a), 9.32(a)(2)(B) (West 2011). A "reasonable belief" is that which "would be held by an ordinary and prudent man in the same circumstances as the actor." *Id.* § 1.07(a)(42) (West Supp. 2017).

**The Evidence**

At trial, Casey Luna testified that he was a friend or associate of both Lang and Ladue. On the night of the murder, he was with Lang at a Whataburger in Tyler. Luna heard Lang tell Ladue over the phone to go by her house and get some money.

Christina testified that she, Ladue, and Dilbeck stopped at Lang's home on their way to a game room in Tyler. Dilbeck parked the car in the street, and Ladue went to the back of the house. After about five minutes, Christina became concerned. Dilbeck called Ladue on his cell phone. The call was answered, but Ladue did not speak to Dilbeck. Christina could hear Ladue and another person yelling back and forth. She believed that she heard the other person say either "I don't know you" or "I don't owe you." The call lasted about thirty seconds before it was disconnected. Dilbeck called again, but there was no answer. Dilbeck and Christina lowered the car windows. They heard silence and then a gunshot. Seconds later, Ladue ran from behind the house and got in the car. Christina saw that Ladue was shot. Dilbeck drove toward the police station. Ladue's heart stopped before emergency medical services arrived.

Roshee Boyd testified that he lived at Lang's home with Lang, Appellant, and Lang's sister-in-law, Alea. That night, he was in his bedroom when he heard someone arguing and then a gunshot. Appellant knocked on his door and said, "Shot that bitch ass nigga. Tell the police I wasn't here." Appellant went to his room, grabbed some things, and left.

Alea likewise testified that she and Boyd were in their bedroom that night when they heard a gunshot. Appellant knocked on the door and said, "I just shot that mother fucker." Boyd asked, "Who? What happened?" Appellant replied, "Fuck that bitch ass nigga." Appellant instructed them not to tell the police he was there.

Detective Noel Martin of the Smith County Sheriff's Office performed a crime scene investigation. Based on blood spatter evidence, he concluded that Ladue was standing in the back yard near the porch when he was shot. Furthermore, based on the blood spatter evidence, the line of sight to Ladue, and the location where a fired shell casing was recovered, Martin concluded that

3

the shooter was either on the back porch when he fired the shot or just inside the doorway. Martin processed the interior of the home for fingerprints and did not locate any matching Ladue's. Independent crime scene consultant Bob Henderson reviewed the evidence and came to the same conclusions regarding Appellant's and Ladue's locations at the time of the shooting.

Dr. Stephen Hastings performed the autopsy. He determined that Ladue's death was caused by a gunshot that perforated his aorta. Hastings opined that the direction of the bullet was front to back and downward, entering his neck and exiting his back.

DPS Trooper David Ford, a former Cherokee County Sheriff's Deputy, testified that three days after the shooting, he went to a home in Reklaw based on a tip to look for Appellant. When he arrived, he went to the back of the home and found Appellant climbing out through an open window. A bodycam recording of this event was admitted into evidence. Lieutenant Shawn Murray of the Troup Police Department testified that he found the car Appellant was driving near the home where he was apprehended. The car was hidden under some brush and its rear license plate was removed.

Appellant testified that he saw Ladue once or twice before, but he did not recognize him that night. He claimed he was lying in bed when he saw a person's silhouette in the doorway. The person moved toward him. Appellant arose and wrestled with him, and then grabbed a nearby gun. The person turned and ran, and Appellant pursued him. When Appellant reached the kitchen, the gun fired accidentally at an upward angle. At that time, the person was around the top step of the back porch with his back to Appellant.[1] Appellant did not know that the shot hit the person.

Appellant said that after the shot was fired, he knocked on Alea's and Boyd's door, but he was not sure what he told them. Appellant then left because he was scared and "freaked out." He met Lang at a gas station in Turnertown and rode around with her all night. The next morning, Appellant dropped Lang off at the house behind hers. From there, he went to his friend Donny's house in Reklaw. The next day, Donny wanted Appellant's car out of the driveway because he was "all over the news." They moved the car to the pasture and covered it with tall grass. When the police came for Appellant, he was crawling out the back window of Donny's home because the home was locked from the outside, and he was attempting to surrender.

---

[1] Evidence shows that the back door is in the kitchen.

4

**Analysis**

Appellant argues that the evidence in this case supports a conclusion that he acted to defend himself, his home, and his property from someone who he reasonably believed was a burglar or robber. He contends that a majority of the evidence supports his claim that Ladue entered or attempted to enter the back door of the home without Appellant's invitation. Appellant concedes that his flight from the scene might be considered evidence of his guilt, but he argues his explanation that he fled out of fear of his attacker's return is equally believable. He concludes that, even in the light most favorable to the verdict, the evidence is legally insufficient to support a conclusion that he acted in any way other than in defense of his home, self, and property when he killed Ladue. We disagree.

The jury was not required to accept Appellant's version of events as truth, and the evidence aside from Appellant's testimony tends to tell a different story. *See Saxton*, 804 S.W.2d at 914. First, the evidence besides Appellant's testimony does not support his assertion that he believed Ladue was an unknown intruder. Luna testified that Lang sent Ladue to the house for some money. While waiting in the car for Ladue, Christina heard Ladue and another man arguing on Dilbeck's cell phone, then silence, then a gunshot. According to Boyd and Alea, Appellant then knocked on their door and told them he shot someone. But rather than stating that he shot an intruder, Appellant said he shot "that bitch ass nigga" or "that mother fucker."

Second, the evidence does not align with Appellant's assertion that Ladue was shot while running out of the house. The crime scene experts agreed that Ladue was standing outside on the ground when he was shot, not on the top step as Appellant claimed. They further agreed that Appellant could not have shot Ladue from where he said he was in the house. Furthermore, based on Dr. Hastings's opinion that the bullet entered Ladue's body from the front, Ladue could not have been running away from Appellant when he was shot.

Finally, Appellant's actions after the shooting tend to undermine his claim of self-defense. Flight is evidence of guilt. *Urtado v. State*, 605 S.W.2d 907, 915 (Tex. Crim. App. [Panel Op.] 1980). Evidence showed that after Appellant shot Ladue, he told Boyd and Alea not to tell the police he was there, fled, hid his car, and climbed out the back window of his friend's home when the police came for him.

Having examined the evidence in the light most favorable to the verdict, we conclude a rational jury could have found beyond a reasonable doubt that Appellant did not believe deadly

force was immediately necessary to prevent Ladue's imminent commission of robbery. *See Saxton*, 804 S.W.2d at 914; TEX. PENAL CODE ANN. §§ 9.31(a), 9.32(a)(2)(B). Therefore, the evidence is legally sufficient to support Appellant's conviction. We overrule Appellant's first issue.

## COURT COSTS

In Appellant's second issue, he argues that the trial court erred by imposing court costs under the consolidated fee statute that were held to be unconstitutional in *Salinas v. State*. *See* TEX. LOC. GOV'T CODE ANN. § 133.102(a)(1) (West Supp. 2017); *Salinas v. State*, 523 S.W.3d 103, 113 (Tex. Crim. App. 2017). The consolidated fee statute requires a defendant to pay a court cost of $133 on conviction of a felony. TEX. LOC. GOV'T CODE ANN. § 133.102(a)(1). The money received is divided among a variety of state government accounts according to percentages dictated by the statute. *See id.* § 133.102(e) (West Supp. 2017); *Salinas*, 523 S.W.3d at 105. In *Salinas*, the court of criminal appeals held the statute unconstitutional with respect to two accounts: an account for "abused children's counseling" and an account for "comprehensive rehabilitation." *See Salinas*, 523 S.W.3d at 105.

The State argues that the trial court did not err because the Legislature amended the consolidated fee statute to delete the unconstitutional provisions before Appellant's court costs were imposed. *See* Act of May 18, 2017, 85th Leg., R.S., ch. 966, § 1, 2017 Tex. Sess. Law Serv. 3917, 3917–18 (West). In his reply brief, Appellant concedes that his issue should be overruled for this reason. We agree. Accordingly, we overrule Appellant's second issue.

## DISPOSITION

Having overruled Appellant's first and second issues, we *affirm* the trial court's judgment.

JAMES T. WORTHEN
Chief Justice

Opinion delivered September 19, 2018.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**SEPTEMBER 19, 2018**

**NO. 12-17-00240-CR**

**JOSHUA SCALES,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 114th District Court

of Smith County, Texas (Tr.Ct.No. 114-0630-17)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*