**State's Motion for Rehearing Granted, Appellant's Motion for Rehearing Denied, Affirmed, and Majority Opinion and Concurring and Dissenting Opinion on Rehearing filed October 11, 2018.**



**In The**

# Fourteenth Court of Appeals

---

### NO. 14-16-00658-CR

---

### JERMAINE EARVIN JOHNSON, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 263rd District Court
Harris County, Texas
Trial Court Cause No. 1444554**

---

## CONCURRING AND DISSENTING OPINION ON REHEARING

Appellant Jermaine Earvin Johnson challenges his conviction for aggravated robbery, asserting in his first issue that the trial court lacked jurisdiction over his case because a grand jury impaneled by a district court other than the trial court presented the indictment to the trial court. I join section III.A. of the Majority Opinion on Rehearing, in which the court analyzes this issue and concludes that

the trial court had jurisdiction over this case. But, I part ways with the majority on the court's disposition of appellant's second issue, in which appellant asserts that article 102.004(a) of the Texas Code of Criminal Procedure violates the separation-of-powers provision of the Texas Constitution. Under the Court of Criminal Appeals's recent opinion in *Salinas v. State*,[1] this court should find article 102.004(a) facially unconstitutional. Though the majority agrees that the *Salinas* precedent applies, the majority concludes article 102.004(a) does not violate the separation-of-powers provision. Because I disagree with the majority's analysis of this issue and with its conclusion that article 102.004(a) does not violate the separation-of-powers provision, I respectfully dissent.

*Appellant's Constitutional Challenge*

In his second issue, appellant asserts that the jury-fee statute violates the Texas Constitution's separation-of-powers provision because the jury fee constitutes an impermissible tax collected by the judiciary, rather than a legitimate court cost. Article 102.004(a) imposes a $40 fee on a defendant convicted by a jury in a constitutional county court, a county court at law, or a district court.[2] In bringing a facial challenge to the constitutionality of article 102.004(a), appellant contends that article 102.004(a) violates the separation-of-powers provision because the statute does not direct that the funds collected be expended for something that is a legitimate criminal-justice purpose.[3]

---

[1] 523 S.W.3d 105, 106–10 (Tex. Crim. App. 2017).

[2] *See* Tex. Code Crim. Proc. Ann. art. 102.004(a) (West, Westlaw through 2017 1st C.S.).

[3] Under article 102.0045, a person convicted of any offense, other than an offense relating to a pedestrian or the parking of a motor vehicle, shall pay as a court cost, in addition to all other costs, a fee of $4 to be used to reimburse counties for the cost of juror services as provided by Government Code section 61.0015. Tex. Code Crim. Proc. Ann. art. 102.0045(a) (West, Westlaw through 2017 1st C.S.). The court clerk shall remit the fees collected under this article to the comptroller in the manner provided by chapter 133, subchapter B of the Local Government

2

We review the constitutionality of a criminal statute de novo as a question of law.[4]  Because one making a facial challenge attacks the statute itself as opposed to a particular application, the challenger must establish that no set of circumstances exists under which the statute would be valid.[5]  Under the proper facial-challenge analysis, we are to consider only applications in which the statute actually authorizes or prohibits conduct.[6]

*Separation-of-Powers Provision*

The Texas Constitution expressly guarantees the separation of powers among the three branches of government.[7]  Article II, section 1 states:

> The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted. [8]

This section of the Texas Constitution ensures that the powers granted to one governmental branch may be exercised only by that branch, to the exclusion of the other branches.[9]  When one branch of government assumes or is delegated a power more properly attached to another branch, that assumption or delegation of power

---

Code. *Id*. 102.0045(b).  The comptroller shall deposit the fees in the jury service fund.  *Id*.  The jury service fund is created in the state treasury.  *Id*. 102.0045(c).  Appellant has not challenged the jury-reimbursement fee under article 102.0045.  *See id*.

[4] *Ex parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013).

[5] *Peraza v. State*, 467 S.W.3d 508, 514 (Tex. Crim. App. 2015).

[6] *Id.*

[7] Tex. Const. art. II, § 1; *Salinas*, 523 S.W.3d at 106.

[8] Tex. Const. art. II, § 1.

[9] *Ex parte Lo*, 424 S.W.3d at 28.

violates the separation-of-powers provision.[10]  If a statute turns the courts into tax gatherers, then the statute delegates to the courts a power more properly attached to the executive branch.[11]

*The Court of Criminal Appeals's Opinion in Peraza*

We look to Court of Criminal Appeals's precedent to determine the legal standard by which we should analyze appellant's constitutional challenge.  In *Peraza v. State*, the Court of Criminal Appeals reviewed its 1942 opinion in *Ex parte Carson*, in which the high court found a $1 library-fund court cost invalid because the court cost was neither "necessary nor incidental to the trial of a criminal case."[12]  Though the *Carson* case did not involve an allegation that the court cost violated the Texas Constitution's separation-of-powers provision, the intermediate court of appeals in *Peraza* relied upon the *Carson* precedent in determining that the statute in *Peraza* violated the Texas Constitution's separation-of-powers provision.[13]  The Court of Criminal Appeals in *Peraza* concluded that "necessary and incidental to the trial of a criminal case" should not be the legal standard for determining whether court-cost statutes violate the separation-of-powers provision.[14]  The high court based this decision on its conclusion that the rejected standard would be "too limiting" and would "ignore the legitimacy of costs that, although not necessary to, or an incidental expense of, the actual trial of a criminal case, may nevertheless be directly related to the recoupment of costs of judicial resources expended in connection with the prosecution of criminal cases

---

[10] *Salinas*, 523 S.W.3d at 106–07.

[11] *Id.* at 107.

[12] *Ex parte Carson*, 159 S.W.2d 126, 130 (Tex. Crim. App. 1942); *see Peraza*, 467 S.W.3d at 515–17.

[13] *See Peraza*, 467 S.W.3d at 512–13; *Ex parte Carson*, 159 S.W.2d at 127–30.

[14] *See Peraza*, 467 S.W.3d at 517.

within our criminal justice system."[15]

The *Peraza* court held that, "if the statute under which court costs are assessed (or an interconnected statute) provides for an allocation of such court costs to be expended for legitimate criminal-justice purposes, then the statute allows for a constitutional application that will not render the courts tax gatherers in violation of the separation of powers clause."[16] For the purposes of this legal standard, the *Peraza* court stated that a criminal-justice purpose is one that relates to the administration of the criminal-justice system and that courts must determine the legitimacy of a purported criminal-justice purpose on a statute-by-statute, case-by-case basis.[17] The *Peraza* court also emphasized that the challenger shouldered the burden of establishing that the statute operates unconstitutionally in all possible circumstances.[18] The *Peraza* court indicated that a party asserting a facial challenge to the constitutionality of a court-costs statute under the separation-of-powers provision must show that no circumstance exists under which the statute or an interconnected statute provides for an allocation of such court costs to be expended for legitimate criminal-justice purposes.[19]

In *Peraza*, the challenged statute required that the court costs collected be sent to the comptroller and that the comptroller deposit thirty-five percent of the funds into the state treasury to the credit of the state highway fund and sixty-five percent of the funds to the credit of the criminal-justice planning account in the general revenue fund.[20] The *Peraza* court noted that article 102.056 of the Code of

---

[15] *Id*.

[16] *Id*. (footnote omitted).

[17] *Id*. at 517–18.

[18] *See id*. at 516.

[19] *See id*. at 517–19.

[20] *See* Tex. Code Crim. Proc. Ann. art. 102.020(e),(h) (West 2010); *Peraza*, 467 S.W.3d at 519–

Criminal Procedure requires that funds in the criminal-justice planning account be used to reimburse law-enforcement agencies for expenses incurred in collecting a DNA specimen from every person charged with certain crimes.[21] Even if the court costs deposited into the criminal-justice planning account were used to fund criminal-justice projects unrelated to managing the statewide DNA database, the funds still would be used for legitimate criminal-justice purposes.[22]

As to the funds deposited into the state treasury to the credit of the state highway fund, Government Code section 411.145 requires that these funds be used to defray the cost of administering the part of the Government Code governing the collection and management of DNA samples, which the *Peraza* court deemed a legitimate criminal-justice purpose.[23] The *Peraza* court held that the challenger had not met his burden of showing that it was impossible for the court-cost statute to operate constitutionally under any circumstance.[24] The court-cost statute challenged in *Peraza* did not involve the recoupment of costs necessary and incidental to the trial of a criminal case.[25] Nonetheless, the *Peraza* court articulated a single legal standard for determining whether a party has shown that a court-cost statute facially violates the Texas Constitution's separation-of-powers provision, and the high court did not state that this standard would differ depending

---

21.

[21] *See Peraza*, 467 S.W.3d at 518–19.

[22] *See Peraza*, 467 S.W.3d at 519 (concluding that "[t]he statutory scheme allocating these resources to the criminal-justice planning account are required, via interconnected statutory provisions, to be expended for legitimate criminal-justice purposes").

[23] *See* Tex. Gov't Code Ann. § 411.145 (West 2010); *Peraza*, 467 S.W.3d at 519–21.

[24] *Peraza*, 467 S.W.3d at 521.

[25] *See* Tex. Code Crim. Proc. Ann. art. 102.020; *Peraza*, 467 S.W.3d at 518–21.

on the type of court-cost statute.[26]

*The Court of Criminal Appeals's Opinion in Salinas*

Two years later, in *Salinas v. State*, the Court of Criminal Appeals addressed the constitutionality of a statute requiring every convicted felon to pay $133 as a court cost.[27] Though the statute contained an express provision allocating the court costs among various accounts, the high court concluded that two of the accounts did not qualify as an allocation of funds to be expended for legitimate criminal-justice purposes and to that extent the statute was facially unconstitutional in violation of the separation-of-powers provision.[28]

The *Salinas* court said that it was applying the legal standard from *Peraza*.[29] As to the legal standard required to show that a court-cost statute facially violates the separation-of-powers provision, the teachings of *Peraza* and *Salinas* are quite similar.[30] Nonetheless, the *Salinas* court used different words to describe the legal standard.[31] Though the *Peraza* court spoke in terms of statutes "provid[ing] for an allocation of such court costs to be expended for a legitimate criminal justice purpose," the *Salinas* court stated that "*Peraza* requires that the relevant statutes

---

[26] *See Peraza*, 467 S.W.3d at 513–21. The majority purports to apply the legal standards from *Peraza* and *Salinas* (which the majority concludes are the same) to today's case, even though the statute in today's case involves the recoupment of costs that are necessary and incidental to the trial of a criminal case. *See ante* at 8–18 & n.3. The majority concludes that it is unnecessary to address whether a separate legal standard applies in recoupment cases because appellant has not shown that the statute facially violates the separation-of-powers provision under the *Salinas* standard. *See ante* at 18 n.3.

[27] *See* 523 S.W.3d 103, 106–10 (Tex. Crim. App. 2017).

[28] *See id*.

[29] *See id*. at 107 (reciting legal standard from *Peraza)*; *id.* at 109 n. 26 (assertng that the State and the dissenting judges misunderstood *Peraza* and stating what the *Salinas* court concluded is required under *Peraza*).

[30] *See id*. at 106–10; *Peraza*, 467 S.W.3d at 513–21.

[31] *See Salinas*, 523 S.W.3d at 106–10; *Peraza*, 467 S.W.3d at 513–21.

7

direct that the funds be used for something that is a legitimate criminal justice purpose."[32] In finding the statute at issue unconstitutional, the *Salinas* court concluded that the failure of any statute to direct that the court costs be used for a legitimate criminal-justice purpose alone suffices to show that the statute imposing the court cost facially violates the separation-of-powers provision:

> Because the constitutional infirmity in this case is the statute's failure to *direct* the funds to be used in a manner that would make it a court cost (i.e., for something that is a [legitimate] criminal justice purpose), the statute operates unconstitutionally every time the fee is collected, making the statute unconstitutional on its face.[33]

The *Salinas* court emphasized twice in broad language that it found the statute facially unconstitutional because the statute failed to direct the funds to be used for a legitimate criminal-justice purpose.[34] The high court stated that courts should base the determination of what constitutes a legitimate criminal-justice purpose on what the governing statute says about the intended use of the funds, not on whether the funds actually are used for a legitimate criminal-justice purpose.[35]

The *Salinas* case did not involve a statute under which the court recoups costs that are necessary and incidental to the trial of a criminal case, nor did *Salinas* involve a statute that was silent as to the allocation of the court costs collected.[36] Yet, the *Salinas* court used broad language and did not mention any exception for such statutes.[37] Even presuming that appellant's separation-of-powers challenge does not fall within the *Salinas* court's holding, the high court's

---

[32] *Compare Salinas*, 523 S.W.3d at 109 n. 26, *with Peraza*, 467 S.W.3d at 517.

[33] *Salinas*, 523 S.W.3d at 109 n. 26 (emphasis in original).

[34] *See id.* at 109–10, nn. 26 & 36.

[35] *See id.* at 107.

[36] *See id.* at 106–10.

[37] *See id.*

statements constitute deliberate and unequivocal declarations of the law made after mature consideration and for future guidance of the bench and bar.[38]  As judicial dicta, the *Salinas* court's declarations bind this court.[39]  Thus, the *Salinas* decision requires this court to apply the legal standard in that case to all facial, separation-of-powers challenges to court-cost statutes.[40]

Showing that a statute facially violates a constitutional provision ordinarily presents a mighty challenge and a heavy burden, but under *Salinas*, to show that a court-cost statute on its face violates the separation-of-powers provision, a challenger need only show that neither the court-cost statute nor any interconnected statute directs that the funds collected under the court-cost statute be expended for something that is a legitimate criminal-justice purpose.[41] The majority purports to apply the *Salinas* legal standard to this case.[42]  The *Salinas* standard applies to article 102.004(a), even though the statute appears to involve recoupment of costs incurred by the county that are necessary and incidental to the trial of a criminal case, and even though the statute is silent as to the allocation of

---

[38] *See Salinas*, 523 S.W.3d at 106–10; *Murray v. State*, 261 S.W.3d 255, 257 (Tex. App.—Houston [14th Dist.] 2008), *aff'd*, 302 S.W.3d 874 (Tex. Crim. App. 2009).

[39] *See Murray*, 261 S.W.3d at 257; *see also Cervantes-Guevara v. State*, 532 S.W.3d 827, 832 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (holding that when the Court of Criminal Appeals "has deliberately and unequivocally interpreted the law in a criminal matter, we must adhere to its interpretation").

[40] *See id*. at 106–10, nn. 26 & 36; *Hernandez v. State*, No. 01-16-00755-CR, 2017 WL 3429414, at 6–7 (Tex. App.—Houston [1st Dist.] Aug. 10, 2017, no pet. h.) (applying *Salinas* legal standard to court-court statute that was silent as to the allocation of the court costs collected and that involved the recoupment of costs necessary and incidental to the trial of a criminal case).

[41] *See Salinas*, 523 S.W.3d at 106–10, nn. 26 & 36; *Hernandez*, 2017 WL 3429414, at 6–7.

[42] *See ante* at 8–18 & n.3. The majority concludes that it is unnecessary to address whether a separate legal standard applies in recoupment cases because appellant has not shown that the statute facially violates the separation-of-powers provision under the *Salinas* standard.  *See ante* at 18 n.3.

the court costs collected.[43]  Though the *Salinas* legal standard is worded differently from the *Peraza* legal standard, the *Salinas* legal standard is not inconsistent with the result in *Peraza* because the *Peraza* court indicated that the court-cost statutes and interconnected statutes directed that the funds collected be expended for something that is a legitimate criminal-justice purpose.[44]

*The Language of Article 102.004*

Article 102.004, entitled "Jury Fee," provides:

> (a) A defendant convicted by a jury in a trial before a justice or municipal court shall pay a jury fee of $3. A defendant in a justice or municipal court who requests a trial by jury and who withdraws the request not earlier than 24 hours before the time of trial shall pay a jury fee of $3, if the defendant is convicted of the offense or final disposition of the defendant's case is deferred. A defendant convicted by a jury in a county court, a county court at law, or a district court shall pay a jury fee of $40.
>
> (b) If two or more defendants are tried jointly in a justice or municipal court, only one jury fee of $3 may be imposed under this article. If the defendants sever and are tried separately, each defendant convicted shall pay a jury fee.
>
> (c) In this article, "conviction" has the meaning assigned by Section 133.101, Local Government Code.[45]

Article 102.004 does not allocate the jury fee to any specific fund, nor does the statute give any direction as to how the funds collected should be expended.[46]

On original submission appellant and the State agreed that the funds collected under this statute are deposited into the county's general fund.  Shifting

---

[43] *See Salinas*, 523 S.W.3d at 106–10, nn. 26 & 36; *Hernandez*, 2017 WL 3429414, at *6–7.

[44] *See Peraza*, 467 S.W.3d at 513–21.

[45] Tex. Code Crim. Proc. Ann. art. 102.004 (West, Westlaw through 2017 1st C.S.).

[46] *See id.*

its position on rehearing, the State now maintains that the funds collected are deposited into the fund referenced in Local Government Code section 113.004(b)(1).[47] In either case, under article 102.004's unambiguous language, the statute does not direct that the funds collected be expended for something that is a legitimate criminal-justice purpose.[48]

That funds can be used for a legitimate criminal-justice purpose does not satisfy the *Salinas* legal standard, under which we must determine what constitutes a legitimate criminal-justice purpose based on what article 102.004 and any interconnected statute say about the intended use of the funds, not on the actual use of the funds.[49] In *Salinas*, the Court of Criminal Appeals concluded that directing court costs to fund the "Comprehensive Rehabilitation" account — a general-revenue fund dedicated to providing rehabilitation services — violated the Texas Constitution's separation-of-powers provision.[50] In rejecting the argument that the account assists individuals with rehabilitation from injuries that easily could be caused by crime, the Court of Criminal Appeals noted that the statute did not (1) describe the functions or services being funded, (2) impose a criminal-justice restriction on the use of the funds, or (3) mention a criminal-justice purpose.[51] Under *Salinas*, to pass muster under the separation-of-powers provision, article 102.004 or an interconnected statute must direct that the funds collected be expended for something that is a legitimate criminal-justice purpose.[52] Like Local Government Code section 133.102, which the Court of Criminal Appeals found

---

[47] *See* Tex. Local Gov't Code Ann. § 113.004 (West, Westlaw through 2017 1st C.S.).

[48] *See* Tex. Code Crim. Proc. Ann. art. 102.004.

[49] *See Salinas*, 523 S.W.3d at 106–10, nn. 26 & 36; *Hernandez*, 2017 WL 3429414, at 6–7.

[50] *See id.* at 107–08.

[51] *See id.* at 108.

[52] *See id.* at 106–10, nn. 26 & 36.

11

unconstitutional, article 102.004(a) fails to limit the use of the funds collected to serving a criminal-justice purpose.[53]  Indeed, article 102.004 does not say anything about how the funds collected should be expended or where they should be held.[54]

On rehearing, the State suggests that Local Government Code section 113.004 is an interconnected statute, under which the Legislature directs that the funds collected under article 102.004 be expended for something that is a legitimate criminal-justice purpose.  Local Government Code section 113.004, entitled "Classes of County Funds," provides:

> (a) The county treasurer shall divide the funds received by the treasurer's office into three classes. The treasurer shall appropriate the money in each class of funds to the payment of the claims registered in the corresponding class of claims.
>
> (b) The classes of funds consist of:
>
>> (1) jury fees, money received from the sale of estrays, and occupation taxes;
>>
>> (2) money received under the provisions of a road and bridge law, including penalties recovered from railroads for the failure to repair crossings, and all fines and forfeitures; and
>>
>> (3) other money received by the treasurer's office that is not otherwise appropriated by this section or by the commissioners court.
>
> (c) The commissioners court, as it considers proper, may require other accounts to be kept, creating other classes of funds. The court may require scrip to be issued against those accounts and to be registered accordingly.
>
> (d) The commissioners court by order may transfer money on hand from one fund to another as it considers necessary, but amounts that belong to the first class of funds may not be transferred from the payment of claims registered in that class unless there is an excess

---

[53] *Compare* Local Govt. Code Ann. § 133.102 (West, Westlaw through 2017 1st C.S.) *with* Tex. Code Crim. Proc. Ann. art. 102.004.

[54] *See* Tex. Code Crim. Proc. Ann. art. 102.004.

amount in that class.[55]

Section 113.004 directs that the county treasurer shall divide the funds received by the treasurer's office into three classes.[56] The treasurer must appropriate the money in each fund to the payment of claims registered in the class of claims corresponding to the fund.[57] The statute requires the treasurer to put the jury fees the treasurer's office receives into the first fund.[58] The commissioners court may transfer money on hand from one fund to another as it considers necessary, but amounts in the first fund may not be transferred from the payment of claims registered in that fund unless there is an excess amount in that class.[59]

Though section 113.004 only applies to funds received by a county treasurer's office, neither the State nor the majority cite any statute requiring that the funds collected under article 102.004 be forwarded to a county treasurer's office. Without such a statute, section 113.004 cannot direct that the funds collected under article 102.004 be expended for a legitimate criminal-justice purpose because even if the statute required that the funds received by a county treasurer's office be used for such a purpose, no statute requires that the funds collected under article 102.004 be given to the county treasurer's office.[60]

In addition, this court may presume, without deciding, that the jury fees paid under article 102.004 are funds received by the treasurer's office that are placed in

---

[55] Tex. Local Gov't Code Ann. § 113.004 (West, Westlaw through 2017 1st C.S.).

[56] *See id*. § 113.004(a).

[57] *See id*.

[58] *See id*. § 113.004(b).

[59] *See id*. § 113.004(d).

[60] *See Salinas*, 523 S.W.3d at 106–10, nn. 26 & 36; *Hernandez*, 2017 WL 3429414, at 6–7.

the first fund under Local Government Code section 113.004.[61]  Yet, even under this presumption, section 113.004 allows the money in the first fund to be paid for any claim "registered in the corresponding class of claims," without any direction that the money be expended for something that is a legitimate criminal-justice purpose.[62]  The State has not cited and research has not revealed any statute that restricts the nature of the class of claims that may be registered against the first fund under Local Government Code section 113.004.  Neither section 113.004 nor any other statute limits the use of the money in the first fund to purposes that are legitimate criminal-justice purposes.[63]  If and when the first fund contains an excess amount, section 113.004 allows the commissioners court to transfer the money in the first fund to another fund if the commissioners court deems it necessary, without any restriction on how the money should be used.[64]  Like the statute in *Salinas*, section 113.004 does not (1) describe the functions or services being funded by the first fund, (2) impose a criminal-justice restriction on the use of the first fund, or (3) mention a criminal-justice purpose.[65]  Under the statute's clear text, section 113.004 does not direct that the funds collected under article 102.004 be expended for a legitimate criminal-justice purpose.[66]

According to the majority, section 113.004 provides that "the monies in the first fund may be spent only on expenses relating to the first fund, which expressly includes juries."[67]  Section 113.04 contains no such restriction.[68]  Rather, the

---

[61] *See id*. § 113.004 (a),(b).

[62] *See id*. § 113.004.

[63] *See id*.

[64] *See id*. § 113.004(d).

[65] *See Salinas*, 523 S.W.3d at 108.

[66] *See* Tex. Local Gov't Code Ann. § 113.004.

[67] *Ante* at 17.

14

statute allows the first fund to be used to pay any claim "registered in the corresponding class of claims," without requiring that the corresponding class of claims for the first fund relate to juries, estrays, or occupation taxes.[69]

In any event, even under the majority's interpretation of section 113.004, the majority concludes that claims "registered in the corresponding class of claims" against the first fund must relate to juries, estrays, or occupation taxes.[70] But, even if the statute so provided, the statute still would allow the first fund to be used to pay for matters relating to juries in civil cases, estrays, and occupation taxes, none of which would amount to a legitimate criminal-justice purpose.[71] Thus, even under the majority's construction of section 113.004, the statute does not direct that the funds collected under article 102.004 be expended for a legitimate criminal-justice purpose.[72]

Though the majority states in conclusory terms that section 113.004 "mandates that jury fees collected under article 102.004 be used for some legitimate criminal justice purpose,"[73] under its unambiguous language, section 113.004 contains no such mandate.[74] Some statutes direct that the court clerk forward the funds collected under a court-cost statute to the county treasurer with

---

[68] *See* Tex. Local Gov't Code Ann. § 113.004.

[69] *See id.* An "estray" is "[a] valuable tame animal found wandering and ownerless[,] an animal that has escaped from its owner and wanders about." Black's Law Dictionary 572 (7th ed. 1999).

[70] *See ante* at 17.

[71] *See Salinas*, 523 S.W.3d at 107.

[72] *See* Tex. Local Gov't Code Ann. § 113.004.

[73] *Ante* at 17.

[74] *See* Tex. Local Gov't Code Ann. § 113.004.

the requirement that the funds be used for a legitimate criminal-justice purpose.[75] Section 113.004 is not one of these statutes.[76] Under the clear and unambiguous text of section 113.004, that statute does not mandate that funds collected under article 102.004 be expended for a legitimate criminal-justice purpose, and the majority errs in adding this mandate to section 113.004 under the guise of interpretation.[77]

On rehearing, the State also cites Government Code section 61.001(b) for the proposition that the reimbursement of juror expenses under section 61.001(a) must be paid out of the county's jury fund.[78] Presuming, without deciding, that the jury fund to which section 61.001(b) refers is the first fund under Local Government Code section 113.004(b) and that section 61.001(b) requires the reimbursement of juror expenses to be paid out of this fund, this court still could not fairly read the text of section 61.001 as directing that the funds collected under article 102.004 be expended for a legitimate criminal-justice purpose.[79] Nor could this court conclude under a fair reading of the statute that the statute requires that the money in the jury fund be used only for legitimate criminal-justice purposes.[80]

---

[75] *See, e.g.*, Tex. Code Crim. Proc. Ann. art. 102.022 (West, Westlaw through 2017 1st C.S.) (requiring court clerk to deposit court cost collected under the statute in the county treasury or municipal treasury, as applicable, and requiring the treasurer to send the funds to the comptroller with the restriction that the funds be used only by the Texas Commission on Law Enforcement for certain purposes).

[76] *See* Tex. Local Gov't Code Ann. § 113.004.

[77] *See O'Brien v. State*, 544 S.W.3d 376, 384 (Tex. Crim. App. 2018) (stating that "[i]f the plain language [of a statute] is clear and unambiguous, our analysis ends because the Legislature must be understood to mean what it has expressed, and it is not for the courts to add or subtract from such a statute") (internal quotations omitted).

[78] *See* Tex. Gov't Code Ann. § 61.001(a), (b) (West, Westlaw through 2017 1st C.S.).

[79] *See id.*

[80] *See id.* § 61.001.

Under the *Salinas* legal standard, appellant has shown that article 102.004 facially violates the separation-of-powers provision because neither article 102.004 nor an interconnected statute directs that the funds collected under article 102.004(a) be expended for something that is a legitimate criminal-justice purpose.[81] The State cites *Davis v. State,* in support of its position that the jury-fee statute is constitutional. In *Davis,* the First Court of Appeals held that Texas Code of Criminal Procedure article 102.005, which authorizes courts to collect a $40 clerk's fee, was not facially unconstitutional under the separation-of-powers provision.[82] But, *Davis* differs in key respects. The appellant in *Davis* "acknowledge[d] that the statutory purposes for the fee are constitutional."[83] In addition, the *Davis* court applied the *Peraza* legal standard rather than the *Salinas* legal standard that applies to today's case.[84]

Under *Salinas,* the failure of article 102.004 or an interconnected statute to direct the funds collected to be used for something that is a legitimate criminal-justice purpose makes article 102.004(a) facially unconstitutional, in violation of article II, section I of the Texas Constitution.[85]

*Conclusion*

Under *Salinas,* article 102.004(a), which imposes a $40 jury fee, on its face violates article II, section I of the Texas Constitution. Thus, this court should

---

[81] *See Salinas,* 523 S.W.3d at 106–10, nn. 26 & 36; *Hernandez,* 2017 WL 3429414, at 6–7.

[82] *See Davis v. State,* 519 S.W.3d 251, 257 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd).

[83] *Id.*

[84] *See id.*

[85] *See Salinas,* 523 S.W.3d at 107–10; *Hernandez,* 2017 WL 3429414, at 6–7.

17

sustain appellant's second issue (making it unnecessary to address appellant's third issue), modify the judgment to delete the unconstitutional fee, and affirm the trial court's judgment as modified.


/s/     Kem Thompson Frost
         Chief Justice


Panel consists of Chief Justice Frost and Justices Boyce and Jewell (Jewell, J., majority).
Publish — TEX. R. APP. P. 47.2(b).