**Affirmed and Majority and Concurring and Dissenting Opinions filed December 20, 2018.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-17-00511-CR

---

**NICHOLAS JACKSON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Criminal Court at Law No. 8
Harris County, Texas
Trial Court Cause No. 2124534**

---

# CONCURRIUNG AND DISSENTING OPINION

I agree with the majority that appellant's first and second issues lack merit, and that this court should affirm appellant's conviction and sentence. This court's recent precedent in *Moliere v. State* binds this panel to overrule appellant's third issue, in which he asserts that the district-attorney fee imposed in article 102.008(a) of the Texas Code of Criminal Procedure facially violates the Texas

Constitution's separation-of-powers clause.[1]  Though I stand by my dissenting opinion in *Johnson v. State*, the majority correctly determines that the *Johnson* precedent binds this panel to overrule appellant's fourth issue, in which he asserts that the jury fee imposed in article 102.004(a) of the Texas Code of Criminal Procedure facially violates the Texas Constitution's separation-of-powers clause.[2]

I part ways with the majority as to the analysis of the fifth issue, in which appellant asserts that article 102.011(a)(3) and article 102.011(b) of the Texas Code of Criminal Procedure facially violate the Texas Constitution's separation-of-powers clause.  Though the majority concludes otherwise, under binding precedent from the Court of Criminal Appeals, to show that any court-cost statute on its face violates the separation-of-powers clause, a challenger need only show that neither the court-cost statute nor any interconnected statute directs that the funds collected under the court-cost statute be spent for a legitimate criminal-justice purpose.

In his fifth issue, appellant asserts that article 102.011(a)(3) and article 102.011(b) facially violate the Texas Constitution's separation-of-powers clause because each statutory fee constitutes an impermissible tax collected by the judiciary, rather than a legitimate court cost.  The parties have not cited and research has not revealed any binding precedent addressing this issue.[3]

---

[1] *See Moliere v. State*, No. 14-17-00594-CR, 2018 WL 6493882, at *4–7, (Tex. App.—Houston [14th Dist.] Dec. 11, 2018, no pet. h.).

[2] *See Johnson v. State*, No. 14-16-00658-CR, 2018 WL 4925456, at *4–8, (Tex. App.—Houston [14th Dist.] Oct. 11, 2018, no pet. h.) (majority opinion rejecting claim that the jury fee imposed in article 102.004(a) of the Texas Code of Criminal Procedure facially violates the Texas Constitution's separation-of-powers provision); *Johnson*, 2018 WL 4925456, at *9–16 (Frost, C.J. dissenting).

[3] The only appellate court that appears to have addressed whether article 102.011(a)(3) or article 102.011(b) of the Texas Code of Criminal Procedure facially violates the Texas Constitution's separation-of-powers provision is the First Court of Appeals.  In *Allen v. State* that court held that article 102.011(a)(3) does not facially violate the Texas Constitution's separation-of-powers provision.  *See* No. 01-16-00768-CR, 2018 WL 4138965, at *4–9 (Tex. App.—Houston [1st

Article 102.011(a)(3) imposes on a defendant convicted of a felony or a misdemeanor a $5 fee for each witness summoned by a peace officer in the case (the "witness-summoning fee").[4] If a defendant must pay a fee under article 102.011(a), then article 102.011(b) requires the defendant to "also pay 29 cents per mile for mileage required of an officer to perform a service listed in [article 102.011(a)] and to return from performing that service" (the "mileage fee").[5] Appellant's argument amounts to a facial challenge to each statute's constitutionality. Appellant contends that each statute violates the separation-of-powers clause because each statute lacks the requisite directing language — neither statute directs that the funds collected be expended for something that is a legitimate criminal-justice purpose.

*Preservation-of-Error Analysis*

The trial court ordered in its judgment that appellant pay all court costs. The trial court did not impose any court costs in open court, and the judgment does not contain an itemization of the court costs. The Court of Criminal Appeals permits an appellant in this scenario to challenge the constitutionality of article 102.011(a)(3) and article 102.011(b) for the first time on appeal, so appellant did not need to preserve error in the trial court to get appellate review of the challenges he presents today.[6]

*Facial-Challenge Analysis*

We review the constitutionality of a criminal statute de novo as a question of

---

Dist.] Aug. 30, 2018, pet. granted).

[4] *See* Tex. Code Crim. Proc. Ann. art. 102.011(a)(3) (West, Westlaw through 2017 1st C.S.).

[5] *Id.* art. 102.011(b) (West, Westlaw through 2017 1st C.S.).

[6] *See Johnson v. State*, 537 S.W.3d 929, 929 (Tex. Crim. App. 2017) (per curiam); *London v. State*, 490 S.W.3d 503, 507 (Tex. Crim. App. 2016).

3

law.[7]  Because one making a facial challenge attacks the statute itself as opposed to a particular application, the challenger must show that no set of circumstances exists under which the challenged statutes would be valid.[8]  Importantly, under the proper facial-challenge analysis, this court is to consider only applications in which the challenged statute actually authorizes or prohibits conduct.[9]

*The Texas Constitution's Separation-of-Powers Clause*

Our state constitution expressly guarantees the separation of powers among Texas's three branches of government.[10]  Article II, section 1 states:

> The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.

Tex. Const. art. II, § 1.  This foundational guarantee assures that the powers the people of Texas have granted to one governmental branch will not be usurped by another but secured exclusively for the intended branch.[11]  Simply put, the three branches of government must stay within their constitutionally designed lanes.[12]  When one branch assumes or is delegated a power more properly attached to another branch, that action violates the separation-of-powers clause.[13]  If a statute

---

[7] *Ex parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013).

[8] *Peraza v. State*, 467 S.W.3d 508, 514 (Tex. Crim. App. 2015).

[9] *Id.*

[10] Tex. Const. art. II, § 1; *Salinas v. State*, 523 S.W.3d 103, 106 (Tex. Crim. App. 2017).

[11] *Ex parte Lo*, 424 S.W.3d at 28.

[12] *See id*.

[13] *Salinas*, 523 S.W.3d at 106–07.

turns the courts into tax gatherers, then the statute gives to the courts a power more properly attached to the executive branch.[14]

*The Court of Criminal Appeals's Opinion in Peraza*

This court should look to the Court of Criminal Appeals's precedent to determine the legal standard for analyzing appellant's constitutional challenges. In *Peraza v. State*, the Court of Criminal Appeals reviewed its 1942 opinion in *Ex parte Carson*, in which the high court found a $1 library fund court cost invalid as neither "necessary nor incidental to the trial of a criminal case."[15] Though the *Carson* case did not involve an allegation that the court cost violated the Texas Constitution's separation-of-powers clause, the court of appeals in *Peraza* drew guidance from the *Carson* precedent in deciding that the statute in *Peraza* violated the Texas Constitution's separation-of-powers clause.[16] On review, the Court of Criminal Appeals concluded that "necessary and incidental to the trial of a criminal case" should not be the legal standard for determining whether court-cost statutes defy the separation-of-powers clause.[17] The high court reasoned that the rejected standard would be "too limiting" and would "ignore the legitimacy of costs that, although not necessary to, or an incidental expense of, the actual trial of a criminal case, may nevertheless be directly related to the recoupment of costs of judicial resources expended in connection with the prosecution of criminal cases within our criminal justice system."[18]

The *Peraza* court held that, "if the statute under which court costs are

---

[14] *Id.* at 107.

[15] *Ex parte Carson*, 159 S.W.2d 126, 130 (Tex. Crim. App. 1942); *see Peraza*, 467 S.W.3d at 515–17.

[16] *See Peraza*, 467 S.W.3d at 512–13; *Ex parte Carson*, 159 S.W.2d at 127–30.

[17] *See Peraza*, 467 S.W.3d at 517.

[18] *Id*.

assessed (or an interconnected statute) provides for an allocation of such court costs to be expended for legitimate criminal-justice purposes, then the statute allows for a constitutional application that will not render the courts tax gatherers in violation of the separation of powers clause."[19]  For the purposes of this legal standard, the *Peraza* court stated that a criminal-justice purpose is one that relates to the administration of the criminal-justice system and that courts must determine the legitimacy of a purported criminal-justice purpose on a statute-by-statute, case-by-case basis.[20]  The *Peraza* court also emphasized that the challenger takes on the burden to show that the statute operates unconstitutionally in every possible circumstance.[21]  The *Peraza* court signaled that the challenger's burden includes showing that no scenario exists under which the statute or an interconnected statute would provide for an allocation of the court costs to be used for legitimate criminal-justice purposes.[22]

In *Peraza*, the challenged statute required that the court costs collected to be sent to the comptroller and then required the comptroller to deposit 35 percent of the funds into the state treasury to the credit of the state highway fund and the remaining 65 percent to go to the credit of the criminal-justice planning account in the general revenue fund.[23]  The *Peraza* court noted that article 102.056 of the Code of Criminal Procedure requires that funds in the criminal-justice planning account be used to reimburse law-enforcement agencies for expenses incurred in

---

[19] *Id*. (footnote omitted).

[20] *Id.* at 517–18.

[21] *See id.* at 516.

[22] *See id.* at 517–19.

[23] *See* Tex. Code Crim. Proc. Ann. art. 102.020(e),(h) (West 2010); *Peraza*, 467 S.W.3d at 519–21.

collecting a DNA specimen from every person charged with certain crimes.[24] Even if the court costs deposited into the criminal-justice planning account were used to fund criminal-justice projects unrelated to managing the statewide DNA database, the funds still would be used for legitimate criminal-justice purposes.[25]

As to the funds deposited into the state treasury to the credit of the state highway fund, Government Code section 411.145 requires that these funds be used to defray the cost of administering the part of the Government Code governing the collection and management of DNA samples, which the *Peraza* court deemed a legitimate criminal-justice purpose.[26] So, the *Peraza* court held that the challenger had not met his burden of showing that it was impossible for the court-cost statute to operate constitutionally under any circumstance.[27] Notably, the court-cost statute challenged in *Peraza* did not involve the recoupment of costs necessary and incidental to the trial of a criminal case.[28] Nonetheless, the *Peraza* court articulated a single legal standard for deciding whether a challenger has shown that a court-cost statute facially violates the Texas Constitution's separation-of-powers clause, and the high court did not say that this standard would differ depending on the type of court-cost statute.[29]

*The Court of Criminal Appeals's Opinion in Salinas*

Two years after *Peraza*, in *Salinas v. State*, the Court of Criminal Appeals

---

[24] *See Peraza*, 467 S.W.3d at 518–19.

[25] *See Peraza*, 467 S.W.3d at 519 (concluding that "[t]he statutory scheme allocating these resources to the criminal-justice planning account are required, via interconnected statutory provisions, to be expended for legitimate criminal-justice purposes").

[26] *See* Tex. Gov't Code Ann. § 411.145 (West 2010); *Peraza*, 467 S.W.3d at 519–21.

[27] *Peraza*, 467 S.W.3d at 521.

[28] *See* Tex. Code Crim. Proc. Ann. art. 102.020; *Peraza*, 467 S.W.3d at 518–21.

[29] *See Peraza*, 467 S.W.3d at 513–21.

addressed the constitutionality of a statute requiring every convicted felon to pay $133 as a court cost.[30] Though the statute contained an express provision allocating the court costs among various accounts, the high court concluded that two of the accounts did not qualify as an allocation of funds to be expended for legitimate criminal-justice purposes and, to that extent, deemed the statute facially unconstitutional.[31]

The *Salinas* court said that it was applying the legal standard from *Peraza*.[32] As to the legal standard required to show that a court-cost statute facially violates the separation-of-powers clause, the teachings of *Peraza* mirror the teachings of *Salinas*.[33] Yet, the *Salinas* court used different words to describe this legal standard.[34] The *Peraza* court spoke in terms of statutes "provid[ing] for an allocation of such court costs to be expended for a legitimate criminal justice purpose" while the *Salinas* court stated that "*Peraza* requires that the relevant statutes direct that the funds be used for something that is a legitimate criminal justice purpose."[35] In finding the *Salinas* statute unconstitutional in part, the high court pointed to the failure of any statute to direct that the court costs be used for a legitimate criminal-justice purpose and concluded that this failure alone showed that the statute imposing the court cost facially violated the separation-of-powers clause:

Because the constitutional infirmity in this case is the statute's failure

---

[30] *See* 523 S.W.3d 103, 106–10 (Tex. Crim. App. 2017).

[31] See id.

[32] *See id*. at 107 (reciting legal standard from *Peraza)*; *id.* at 109 n. 26 (asserting that the State and the dissenting judges misunderstood *Peraza* and stating what the *Salinas* court concluded is required under *Peraza*).

[33] *See id*. at 106–10; *Peraza*, 467 S.W.3d at 513–21.

[34] *See Salinas*, 523 S.W.3d at 106–10; *Peraza*, 467 S.W.3d at 513–21.

[35] *Compare Salinas*, 523 S.W.3d at 109 n. 26, *with Peraza*, 467 S.W.3d at 517.

to *direct* the funds to be used in a manner that would make it a court cost (i.e., for something that is a [legitimate] criminal justice purpose), the statute operates unconstitutionally every time the fee is collected, making the statute unconstitutional on its face.[36]

The *Salinas* court stressed in broad language that it found the statute facially unconstitutional because the statute did not direct the funds to be used for a legitimate criminal-justice purpose.[37] The high court stated that courts should base the determination of what constitutes a legitimate criminal-justice purpose on what the governing statute says about the intended use of the funds, not on whether the funds actually are used for a legitimate criminal-justice purpose.[38]

The *Salinas* case did not involve a statute under which the court recoups costs that are necessary and incidental to the trial of a criminal case, nor did *Salinas* involve a statute that said nothing about the allocation of the court costs collected.[39] Even so, the *Salinas* court used expansive language and did not mention any exception for such statutes. *See id.* Presuming for argument's sake that appellant's separation-of-powers challenge does not fall within the *Salinas* court's holding, the high court's statements retain their relevance as judicial dicta because they constitute deliberate and unequivocal declarations of the law made after mature consideration and for future guidance of the bench and bar.[40] These judicial dicta bind this court.[41]

---

[36] *Salinas*, 523 S.W.3d at 109 n. 26 (emphasis in original).

[37] *See id.* at 109–10, nn. 26 & 36.

[38] *See id.* at 107.

[39] *See id.* at 106–10.

[40] *See Salinas*, 523 S.W.3d at 106–10; *Murray v. State*, 261 S.W.3d 255, 257 (Tex. App.—Houston [14th Dist.] 2008), *aff'd*, 302 S.W.3d 874 (Tex. Crim. App. 2009).

[41] *See Murray*, 261 S.W.3d at 257; *see also Cervantes-Guervara v. State*, 523 S.W.3d 827, 832 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (holding that when the Court of Criminal Appeals "has deliberately and unequivocally interpreted the law in a criminal matter, we must

*Salinas* compels this court to apply the legal standard in that case to all facial, separation-of-powers challenges to court-cost statutes.[42] In criminal appeals, this court must follow precedent from the Court of Criminal Appeals.[43] We may not remodel the legal standard. We lack the authority to to add to or take away from the high court's precedent.[44] If the high court sees reason to make changes, the high court can do so. Until then, in analyzing the constitutionality of court-cost statutes, we must look to the Court of Criminal Appeals's unadulterated standard: to show that a court-cost statute facially violates the separation-of-powers clause, a challenger need only show that neither the court-cost statute nor any interconnected statute directs that the funds collected under the court-cost statute be expended for something that is a legitimate criminal-justice purpose.[45]

The *Salinas* standard applies to appellant's challenges to article 102.011(a)(3) and article 102.011(b), even presuming that each statute involves recoupment of costs incurred by the county that are necessary and incidental to the trial of a criminal case, and even though each statute is silent as to the allocation of the court costs collected.[46] Though the *Salinas* legal standard and the *Peraza* legal standard feature different wording, they do not conflict. Nor is the *Salinas* legal standard inconsistent with the result in *Peraza* because the *Peraza* court indicated

---

adhere to its interpretation").

[42] *See Salinas*, 523 S.W.3d at 106–10, nn. 26 & 36; *Hernandez v. State*, No. 01-16-00755-CR, 2017 WL 3429414, at 6–7 (Tex. App.—Houston [1st Dist.] Aug. 10, 2017, no pet. h.) (applying *Salinas* legal standard to court-court statute that was silent as to the allocation of the court costs collected and that involved the recoupment of costs necessary and incidental to the trial of a criminal case).

[43] *See State of Texas ex rel. Vance v. Hatten*, 508 S.W.2d 625, 628 (Tex. Crim. App. 1974); *Gardner v. State*, 478 S.W.3d 142, 147 (Tex. App.–Houston [14th Dist.] 2015, pet. ref'd).

[44] *See Hatten*, 508 S.W.2d at 628; *Gardner*, 478 S.W.3d at 147.

[45] *See Salinas*, 523 S.W.3d at 106–10, nn. 26 & 36; *Hernandez*, 2017 WL 3429414, at 6–7.

[46] *See Salinas*, 523 S.W.3d at 106–10, nn. 26 & 36; *Hernandez*, 2017 WL 3429414, at *6–7.

that the court-cost statutes and interconnected statutes directed that the funds collected be expended for something that is a legitimate criminal-justice purpose.[47]

*The Statutory Language*

Article 102.011, entitled "Fees for services of Peace Officers," provides:

(a) A defendant convicted of a felony or a misdemeanor shall pay the following fees for services performed in the case by a peace officer:
. . .
(3) $5 for summoning a witness;
. . .

(j) In this article, "conviction" has the meaning assigned by Section 133.101, Local Government Code.

(b) In addition to fees provided by Subsection (a) of this article, a defendant required to pay fees under this article shall also pay 29 cents per mile for mileage required of an officer to perform a service listed in this subsection and to return from performing that service. If the service provided is the execution of a writ and the writ is directed to two or more persons or the officer executes more than one writ in a case, the defendant is required to pay only mileage actually and necessarily traveled. In calculating mileage, the officer must use the railroad or the most practical route by private conveyance. . . This subsection applies to:

(1) conveying a prisoner after conviction to the county jail;

(2) conveying a prisoner arrested on a warrant or capias issued in another county to the court or jail of the county; and

(3) traveling to execute criminal process, to summon or attach a witness, and to execute process not otherwise described by this article.[48]

Article 102.011 does not allocate the witness-summoning fee or the mileage fee to any specific fund, nor does the statute give any direction as to how the funds

---

[47] *See Peraza*, 467 S.W.3d at 513–21.

[48] Tex. Code Crim. Proc. Ann. art. 102.011.

11

collected should be expended.[49]   Under article 102.011's unambiguous language, the statute does not direct that the funds collected be expended for something that is a legitimate criminal-justice purpose.[50]

That funds *could* be used for a legitimate criminal-justice purpose does not satisfy the *Salinas* legal standard.[51]   In assessing what constitutes a legitimate criminal-justice purpose, we must look to what article 102.011 and any interconnected statute say about the intended use of the funds — not to the *actual* use of the funds.[52]   The *Salinas* court concluded that directing court costs to fund the "Comprehensive Rehabilitation" account — a general-revenue fund dedicated to providing rehabilitation services — violated the Texas Constitution's separation-of-powers clause.[53]   In rejecting the notion that the account helps people  with rehabilitation from injuries that easily could be caused by crime, the Court of Criminal Appeals noted that the statute did not (1) describe the functions or services being funded, (2) impose a criminal-justice restriction on the use of the funds, or (3) mention a criminal-justice purpose.[54]   According to *Salinas*, to pass muster under the separation-of-powers clause, article 102.011 or an interconnected statute must direct that the funds collected be expended for something that is a legitimate criminal-justice purpose.[55]   The statute's constitutionality depends on it.

Like Local Government Code section 133.102, which the Court of Criminal Appeals found unconstitutional in *Salinas*, article 102.011 fails to limit the use of

---

[49] *See id.*

[50] *See id.*; *Salinas*, 523 S.W.3d at 106–10, nn. 26 & 36.

[51] *See Salinas*, 523 S.W.3d at 106–10, nn. 26 & 36; *Hernandez*, 2017 WL 3429414, at 6–7.

[52] *See Salinas*, 523 S.W.3d at 106–10, nn. 26 & 36; *Hernandez*, 2017 WL 3429414, at 6–7.

[53] *See Salinas*, 523 S.W.3d at 107–08.

[54] *See id.* at 108.

[55] *See id.* at 106–10, nn. 26 & 36.

the funds collected to serving a criminal-justice purpose.[56]  Article 102.011 does not say a word about how the collected funds should be spent or where they should be held.[57]  Under article 102.011's plain language, the statute does not direct that the funds collected be expended for something that is a legitimate criminal-justice purpose.[58]

The majority concludes that article 102.011 explicitly directs the payment of the witness-summoning fee and mileage fee for services performed in connection with the recoupment of the costs of summoning witnesses for criminal trials.[59]  The majority also concludes that the witness-summoning fee "is an actual recoupment of the out of pocket expenses incurred for summoning witnesses and for associated mileage."[60]  But the majority uses its own metric to measure constitutionality.

This court cannot insert saving language into the statute nor turn away from the high court's standard.  Changing the metric could change the outcome.

Article 102.011(a)(3) simply says that "[a] defendant convicted of a felony or a misdemeanor shall pay the following fees for services performed in the case by a peace officer:  . . . $5 for summoning a witness."[61]  Under article 102.011(b), a defendant required to pay fees under article 102.011(a) also must pay 29 cents per mile for mileage required of an officer to perform a service listed in article 102.011(a) and to return from performing that service.[62]  Under the statute's plain

---

[56] *Compare* Local Govt. Code Ann. § 133.102 (West, Westlaw through 2017 1st C.S.) *with* Tex. Code Crim. Proc. Ann. art. 102.011.

[57] *See* Tex. Code Crim. Proc. Ann. art. 102.011.

[58] *See Salinas* at 106–10, nn. 26 & 36.

[59] *See ante* at 14.

[60] *See id*.

[61] Tex. Code Crim. Proc. Ann. art. 102.011(a).

[62] *See id*.

language the convicted defendant must pay a fee based a peace officer's services.[63] The statute does not provide, as the majority concludes, that the witness-summoning fee or the mileage fee is an actual recoupment of out-of-pocket expenses incurred for summoning witnesses and for associated mileage.

The statute does not state that the purpose of the fee is to reimburse the peace officer.[64] Article 102.011 does not state that the funds collected under article 102.011(a)(3) or article 102.011(b) should be expended for the reimbursement of any peace officer.[65] The fact that a peace officer's services trigger these fees does not mean that the purpose of the fee is to reimburse the peace officer or his employer. Even if reimbursement of a peace officer or the peace officer's employer would be for a legitimate criminal-justice purpose, article 102.011 does not direct that the funds collected under article 102.011(a)(3) be expended for this purpose.[66]

A divided panel of the First Court of Appeals recently concluded in the *Allen* case that article 102.011(a)(3) does not facially violate the separation-of-powers clause.[67] That court did not address whether article 102.011(a)(3) satisfies the *Salinas* standard but suggested that the statute does not.[68] Taking a different approach, the *Allen* court reasoned that the *Salinas* standard does not apply to court costs used to reimburse criminal-justice expenses incurred in connection with that criminal prosecution.[69] According to the *Allen* court, the *Peraza* court held "that at

---

[63] *See id.*

[64] *See id.*

[65] *See id.*

[66] *See id.*

[67] *See Allen v. State*, No. 01-16-00768-CR, 2018 WL 4138965, at *4–9 (Tex. App.—Houston [1st Dist.] Aug. 30, 2018, pet. granted).

[68] *See id.* at *8–9.

[69] *See id.* at *7–9.

14

least two types of fees assessed as court costs are constitutionally permissible: (1) court costs to reimburse criminal-justice expenses incurred in connection with that criminal prosecution and (2) court costs to be expended in the future to off-set future criminal-justice costs."[70]  The *Allen* court reasoned that *Peraza* created one legal standard for court costs that reimburse expenses incurred in connection with that criminal prosecution and another legal standard for all other court costs.[71] That is not what *Peraza* says.

According to the *Allen* court, the *Salinas* court dealt with the second legal standard and did not change the first legal standard under *Peraza*.[72]  Applying an analysis similar to the *Allen* court, today the majority likewise revamps the high court's legal standard, pronouncing that if a statute imposes court costs related to the recoupment of costs of judicial resources, then under *Peraza* the statute does not facially violate the Texas Constitution's separation-of-powers provision, even if no statute directs the funds collected to be used for something that is a legitimate criminal-justice purpose.[73]

The *Allen* court and the majority have misinterpreted *Peraza* and *Salinas*. The *Peraza* court articulated a single legal standard for deciding whether a party has shown that a court-cost statute facially violates the Texas Constitution's separation-of-powers clause, and the high court did not state that this standard would vary depending on the type of court-cost statute under scrutiny.[74]  The *Salinas* court re-stated this single legal standard in a similar way, using slightly

---

[70] *Id*. at *7.

[71] *See id*.

[72] *See id*. at *8–9.

[73] *See ante* at 12–14.

[74] *See Peraza*, 467 S.W.3d at 513–21.

different words.[75]   Therefore, the *Salinas* standard applies to appellant's fourth issue.[76]   Under *Salinas*, the failure of article 102.011 or an interconnected statute to direct the funds collected to be used for something that is a legitimate criminal-justice purpose would mean article 102.011(a)(3) facially violates article II, section I of the Texas Constitution.[77]

This court should (1) conclude that under precedent from the Court of Criminal Appeals, to be constitutional each challenged statute or a statute interconnected with the challenged statute must direct the funds collected to be used for something that is a legitimate criminal-justice purpose; (2) hold that neither article 102.011(a)(3) nor article 102.011(b) directs the funds collected to be so used; and (3) determine whether any interconnected statute directs that the funds collected be used for something that is a legitimate criminal-justice purpose. Because the court fails to do so, I respectfully dissent.

/s/    Kem Thompson Frost
Chief Justice

Panel consists of Chief Justice Frost and Justices Christopher and Jamison. (Jamison, J., majority).
Publish — Tex. R. App. P. 47.2(b).

---

[75] *See Salinas*, 523 S.W.3d at 106–10; *Peraza*, 467 S.W.3d at 513–21.

[76] *See Salinas*, 523 S.W.3d at 106–10; *Peraza*, 467 S.W.3d at 513–21.

[77] *See Salinas*, 523 S.W.3d at 107–10.