**Opinion filed July 11, 2019**



### In The

# Eleventh Court of Appeals

_____

## No. 11-17-00179-CR

_____

## JAMES ELWOOD KING JR., Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 220th District Court**

**Comanche County, Texas**

**Trial Court Cause No. CR-04105**

### M E M O R A N D U M   O P I N I O N

James Elwood King Jr. was convicted of the offense of assault family violence. In one issue on appeal, Appellant challenges the constitutionality of certain court costs assessed against him.

We sustain Appellant's challenge to the constitutionality of the time payment fee authorized by Section 133.103(a), (b), and (d) of the Texas Local Government Code. *See* TEX. LOC. GOV'T CODE ANN. § 133.103(a), (b), (d) (West Supp. 2018). We conclude that, with regard to the collection and allocation of funds under these

subsections—which are allocated to general revenue without limitation or restriction—the statute is facially unconstitutional because it violates the separation-of-powers provision in the Texas Constitution. We overrule Appellant's other challenges in all respects. Therefore, we modify the trial court's judgment, and as modified, we affirm.

The facts of this case are undisputed. Appellant was charged by indictment with assault family violence by choking his wife, Alma King. After the jury heard the evidence, it found Appellant guilty and found an enhancement allegation to be true, which elevated the offense to a second-degree felony. The jury assessed Appellant's punishment at confinement for ten years and a $5,000 fine. The trial court sentenced Appellant in accordance with the jury's verdict and assessed court costs of $369.

Subsequently, the Comanche County District Clerk prepared a certified bill of costs, which reflected that Appellant owed, among other amounts: $40.00 for a "CRIMINAL CLERK[']S FEE"; $4.00 for a "JUROR REIMBURSEMENT FEE"; $2.00 for the "CRIMINAL INDIGENT DEFENSE FUND"; and $25.00 for a "TIME PAYMENT FEE/STATE."

In a single issue on appeal, Appellant contends that the statutes under which the costs were imposed are facially unconstitutional because they violate the separation-of-powers clause in the Texas Constitution. As such, Appellant challenges the constitutionality of: the "CRIMINAL CLERK[']S FEE," which was authorized by Article 102.005 of the Texas Code of Criminal Procedure; the "JUROR REIBURSEMENT FEE," which was authorized by Article 102.0045 of the Texas Code of Criminal Procedure; 10% of the "CRIMINAL INDIGENT DEFENSE FUND" fee, which was authorized by Section 133.107 of the Texas Local Government Code; and 90% of the "TIME PAYMENT FEE/STATE," which was authorized by Section 133.103 of the Texas Local Government Code.

Even though Appellant did not make these challenges in the trial court, he was not required to. The record does not reflect that the challenged court costs were imposed in open court, nor were they itemized in the judgment. Accordingly, Appellant may raise his constitutional complaints for the first time on appeal because he did not have an opportunity to timely raise them in the trial court. *See London v. State*, 490 S.W.3d 503, 507 (Tex. Crim. App. 2016); *Ingram v. State*, 503 S.W.3d 745, 748 (Tex. App.—Fort Worth 2016, pet. ref'd).

Whether a statute is constitutional is a question of law we review de novo. *Ex parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013). When we review issues as to the constitutionality of a statute, we "presume that the statute is valid and that the legislature was neither unreasonable nor arbitrary in enacting it." *Curry v. State*, 186 S.W.3d 39, 42 (Tex. App.—Houston [1st Dist.] 2005, no pet.); *see* TEX. GOV'T CODE ANN. § 311.021 (West 2013); *Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002). We must uphold the statute if we can apply a reasonable construction that will render it constitutional. *Ely v. State*, 582 S.W.2d 416, 419 (Tex. Crim. App. [Panel Op.] 1979); *see Maloney v. State*, 294 S.W.3d 613, 626 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (if statute can be interpreted in two ways, one of which sustains its validity, we apply interpretation sustaining its validity). The party that challenges the statute has the burden to establish unconstitutionality. *Rodriguez*, 93 S.W.3d at 69; *Maloney*, 294 S.W.3d at 626

"A facial challenge is an attack on a statute itself as opposed to a particular application." *City of Los Angeles v. Patel*, 135 S.Ct. 2443, 2449 (2015). "[T]o prevail on a facial challenge, a party must establish that the statute always operates unconstitutionally in all possible circumstances." *State v. Rosseau*, 396 S.W.3d 550, 557 (Tex. Crim. App. 2013). Courts are to "consider the statute only as it is written, rather than how it operates in practice." *State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 908 (Tex. Crim. App. 2011); *Karenev v. State*, 281 S.W.3d 428, 441 (Tex. Crim.

App. 2009) (Cochran, J., concurring) (facial attack "can and must be made without reference to evidence. . . . Once it does or must refer to specific evidence it has passed out of the 'facial attack' arena and has become something else.").

Appellant's facial constitutional challenges are grounded in separation-of-powers concepts. The Texas Constitution contains the separation-of-powers provision, which prohibits one branch of government from assuming or delegating a power more properly attached to another branch. *See* TEX. CONST. art. II, § 1; *Ex parte Lo*, 424 S.W.3d at 28. A court's assessment of court costs in a criminal case violates the separation-of-powers clause when a court is delegated the executive branch's power to collect taxes. *Salinas v. State*, 523 S.W.3d 103, 106–07 (Tex. Crim. App. 2017); *Peraza v. State*, 467 S.W.3d 508, 517 (Tex. Crim. App. 2015). If, for example, a statute contains a provision by which courts are turned into "tax gatherers," then the effect of the statute is to delegate to courts a power more properly attached to the executive branch. *Salinas*, 523 S.W.3d at 107.

However, a court's assessment of costs is a proper judicial function when "the statute under which court costs are assessed (or an interconnected statute) provides for an allocation of such court costs to be expended for legitimate criminal justice purposes." *Id.* at 107 (quoting *Peraza*, 467 S.W.3d at 517). In other words, a reviewing court must determine whether the fee is a disguised tax on a criminal defendant, which is unconstitutional, or a fee for a legitimate criminal justice purpose, which is constitutional. *See Casas v. State*, 524 S.W.3d 921, 925–27 (Tex. App.—Fort Worth 2017, no pet.). "What constitutes a legitimate criminal justice purpose is a question to be answered on a statute-by-statute/case-by-case basis." *Salinas*, 523 S.W.3d at 107. "And the answer to that question is determined by what the governing statute says about the intended use of the funds, not whether funds are actually used for a criminal justice purpose." *Id.*

Again, Appellant was assessed a $40 "CRIMINAL CLERK[']S FEE," a $4.00 "JUROR REIBURSEMENT FEE," and a $2.00 "CRIMINAL INDIGENT DEFENSE FUND" fee, which he contends are unconstitutional because the fees are not directed by statute to a legitimate criminal purpose; rather, the fees go into a general fund without limitation or restriction. We hold that these challenged fees are not facially unconstitutional. *See Johnson v. State*, 573 S.W.3d 328, 336–40 (Tex. App.—Houston [14th Dist.] 2019, pet. filed).

Article 102.005 of the Texas Code of Criminal Procedure authorized the district clerk's fee. Article 102.005(a) states that "[a] defendant convicted of an offense in a county court, a county court at law, or a district court shall pay for the services of the clerk of the court a fee of $40." TEX. CODE CRIM. PROC. ANN. art. 102.005(a) (West 2018). The basis of the fee, according to Article 102.005(c), "is for all clerical duties performed by the clerk." *Id.* art. 102.005(c).

Three other Texas Courts of Appeals have recently addressed facial constitutional challenges to the district clerk's fee, and all three upheld the fee as constitutional. *See Johnson*, 573 S.W.3d at 336–37; *Moliere v. State*, 574 S.W.3d 21, 31–32 (Tex. App.—Houston [14th Dist.] 2018, pet. filed); *Thornton v. State*, No. 05-17-00220-CR, 2018 WL 2773390, at *3 (Tex. App.—Dallas June 11, 2018, no pet.) (mem. op., not designated for publication); *Davis v. State*, 519 S.W.3d 251, 257 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd). We agree with those holdings, and we conclude that the statute that authorizes the district's clerk's fee is not facially unconstitutional. Rather, as the court held in *Peraza,* the district clerk's fee is a recoupment of costs expended in the trial of the case. *Peraza*, 467 S.W.3d at 517. Further, the fee serves a legitimate criminal justice purpose. *Thornton*, 2018 WL 2773390, at *3 (fee is "intended to be spent reimbursing the clerk for services listed in the statute attendant to a criminal court proceeding" (citing *Salinas*, 523 S.W.3d at 109 n.26, 110 n.36)).

5

The jury service fee is authorized by Article 102.0045 of the Texas Code of Criminal Procedure. Article 102.0045(a) provides: "A person convicted of any offense, other than an offense relating to a pedestrian or the parking of a motor vehicle, shall pay as a court cost, in addition to all other costs, a fee of $4 to be used to reimburse counties for the cost of juror services . . . ." CRIM. PROC. art. 102.0045(a). The statute provides that the fee is to be deposited into the "jury service fund"; Section 102.0045(b) provides that the treasurer is to remit the collected fees to the comptroller, who then "shall deposit the fees in the jury service fund." *Id.* art. 102.0045(b).

If a county files a claim for reimbursement, the State is to reimburse the county for the cost of juror services. Under Section 61.0015 of the Government Code, the State "shall reimburse a county $34 a day" for the county's cost of paying each person who reports for jury service. GOV'T § 61.0015(a), (b). The comptroller shall pay claims for reimbursement "from money collected under Article 102.0045, Code of Criminal Procedure, and deposited in the jury service fund." *Id.* § 61.0015(c). The funds collected under Article 102.0045 and paid under Section 61.0015 "reimburse counties for the cost of juror services," which necessarily includes services pertaining to criminal juries. CRIM. PROC. art. 102.0045(a); *see also Johnson v. State*, 562 S.W.3d 168, 179 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd) (jury expenses "include those pertaining to criminal juries").

We hold that the jury service fee is not facially unconstitutional. *See Johnson*, 573 S.W.3d at 337. This fee is a recoupment of costs expended in the trial of the case. *See Peraza*, 467 S.W.3d at 517; *see also Johnson*, 573 S.W.3d at 337. Moreover, the fee is expended for legitimate criminal purposes. *See Peraza*, 467 S.W.3d at 519.

Nevertheless, Appellant argues that the jury service fee is unconstitutional because 90% of the jury service fee is purportedly deposited in the State general revenue fund and 10% could be deposited in a county or city general fund as a service fee. In support of this contention, Appellant cites to portions of the Local Government Code, a report from the comptroller's website, and a study from the Office of Court Administration. *See* LOC. GOV'T § 133.058(a) (permitting a municipality or county to "retain 10 percent of the money collected from fees as a service fee for the collection if the municipality or county remits the remainder of the fees to the comptroller within the period prescribed by Section 133.055(a)"); Office of Court Administration, *Study of the Necessity of Certain Court Costs and Fees in Texas* (Sept. 1, 2014), at 6–7 in Criminal Court Cost Section (Fee No. 13, "Prosecutor's Fee"), http://www.txcourts.gov/media/495634/SB1908-Report-FINAL.pdf; Texas Comptroller Manual of Accounts, *Revenue Object 3704 – Court Costs – Jury Reimbursement Fees*, (Fiscal 2018), https://fmcpa.cpa.state.tx.us/fiscalmoa/rev.jsp?id=15185.

However, we may not consider the report from the comptroller's website or the Office of Court Administration's study in our analysis of the facial constitutionality of the jury service fee. *Salinas* expressly held that what constitutes a legitimate criminal justice purpose "is determined by what the governing statute says about the intended use of the funds, not whether funds are actually used for a criminal justice purpose." *Salinas*, 523 S.W.3d at 107; *see Johnson*, 573 S.W.3d at 338. Here, the governing statute, Article 102.0045(a), expressly provides that the fee is "used to reimburse counties for the cost of juror services." CRIM. PROC. art. 102.0045(a).

Appellant has not demonstrated that Article 102.0045 and the $4.00 fee it authorizes operates unconstitutionally in every instance. *See Johnson*, 573 S.W.3d at 337. We overrule Appellant's constitutional challenge to the jury service fee.

Section 133.107 of the Texas Local Government Code authorized the indigent defense fee. Section 133.107(a) provides, in relevant part: "A person convicted of any offense, other than an offense relating to a pedestrian or the parking of a motor vehicle, shall pay as a court cost, in addition to other costs, a fee of $2." LOC. GOV'T § 133.107(a). The fee "is to be used to fund indigent defense representation through the fair defense account established under Section 79.031, Government Code." *Id.* After the comptroller receives the indigent defense fee, Section 133.107(b) provides that the comptroller "credit the remitted fees to the credit of the fair defense account." *Id.* § 133.107(b).

"The fair defense account is an account in the general revenue fund that may be appropriated only to: (1) the commission for the purpose of implementing [Chapter 79]; and (2) the office of capital and forensic writs for the purpose of implementing Subchapter B, Chapter 78." GOV'T § 79.031 (West Supp. 2018).

Chapter 79 of the Texas Government Code, entitled "Texas Indigent Defense Commission," governs the commission's role to "develop policies and standards for providing legal representation and other defense services to indigent defendants at trial, on appeal, and in postconviction proceedings." *Id.* § 79.034(a). The policies and standards include, among other things, "standards governing the availability and reasonable compensation of providers of indigent defense support services for counsel appointed to represent indigent defendants." *Id.* § 79.034(a)(9). "Indigent defense support services," as that term is used in Section 79.034(a)(9), means "criminal defense services that: (A) are provided by licensed investigators, experts, or other similar specialists, including forensic experts and mental health experts; and (B) are reasonable and necessary for appointed counsel to provide adequate representation to indigent defendants." *Id.* § 79.001(9). The Fourteenth Court of Appeals read Section 79.001(9) "to include 'indigent defense representation,' as that

term is used in Local Government Code section 133.107." *Johnson*, 573 S.W.3d at 338. We adopt the same interpretation.

The foregoing provisions therefore establish that the indigent defense fee is expended for a legitimate criminal justice purpose: the protection of an indigent criminal defendant's right to counsel. *See id.* As such, the statute is not facially unconstitutional.

Yet, Appellant argues that the indigent defense fee is unconstitutional because 10% could be deposited into a county or city's general fund as a service fee. To support his argument, Appellant again cites to portions of the Local Government Code, a report from the comptroller's website, and a study from the Office of Court Administration. As discussed above, we do not consider these reports in our analysis of the issue presented. *See Salinas*, 523 S.W.3d at 107; *Johnson*, 573 S.W.3d at 338. Here, the statute expressly states that the money is "to fund indigent defense representation" and directs the fees collected to the fair defense account. Loc. Gov't § 133.107.

Appellant has not demonstrated that Section 133.107 of the Local Government Code and the $2.00 fee it authorizes operate unconstitutionally in every instance. *Johnson*, 573 S.W.3d at 338. We overrule Appellant's constitutional challenge to the indigent defense fee.

Finally, Appellant argues that 90% of the "TIME PAYMENT FEE/STATE" is unconstitutional because that portion of the fee is deposited to a general fund without limitation or restriction. We agree and sustain Appellant's challenge to the portion of the statute that apportions the fee to a general fund without limitation or restriction. *See Johnson*, 573 S.W.3d at 340.

Section 133.103 of the Texas Local Government Code contains provisions for the time payment fee. Under Section 133.103(a), a person convicted of a felony or misdemeanor shall pay, in addition to all other costs, a fee of $25 if the person pays

9

"any part of a fine, court costs, or restitution on or after the 31st day after the date on which a judgment is entered assessing the fine, court costs, or restitution." Loc. Gov't § 133.103(a). The statute allots the fees collected in three ways. Generally, the treasurer is directed to (1) send fifty percent of the fees collected to the comptroller, who shall then deposit the fees to the credit of the general revenue fund; (2) deposit forty percent of the fees in the general revenue account of the county or municipality; and (3) deposit the remaining ten percent of the fees in the general fund of the county or municipality "for the purpose of improving the efficiency of the administration of justice." *Id.* § 133.103(b)–(d).

Appellant does not contest the percentage of the fee that is directed to the general fund of the county or municipality "for the purpose of improving the efficiency of the administration of justice." *Id.* § 133.103(c). Instead, Appellant challenges the remaining 90% of collected fees, which is directed to general funds by subsections (b) and (d).

The Fourteenth Court of Appeals recently concluded that Section 133.103(b) and (d) were unconstitutional. *Johnson*, 573 S.W.3d at 340. The *Johnson* court first reasoned that the time payment fee was simply a late fee and did not reimburse the county or State for expenses incurred in connection with the defendant's criminal trial or criminal resources generally. *Id.* Then, the court concluded that subsections (b) and (d) did not direct the funds to be used for a legitimate criminal justice purpose; instead, each time the funds were collected, the funds were sent into a general revenue fund without limitation or restriction. *Id.* As such, the court concluded that subsections (b) and (d) were unconstitutional. *Id.* The court analogized the case to *Salinas* wherein the Court of Criminal Appeals held that certain fees were unconstitutional because the collected fees were sent into general revenue and were not sufficiently related to the criminal justice system. *Id.* (citing *Salinas*, 523 S.W.3d at 107–09).

10

We agree with the *Johnson* court and adopt its reasoning herein. Therefore, we conclude that Section 133.103(b) and (d) are facially unconstitutional. As in *Johnson*, our holding does not apply to Section 133.103(c), which allocates 10% of the fee to the general fund of the county or municipality to be expended for the purpose of improving the efficiency of the administration of justice in the county or municipality. *See Johnson*, 573 S.W.3d at 340.

We sustain in part Appellant's first issue, to the extent he challenges Section 133.103(b) and (d) of the Texas Local Government Code, and modify the trial court's judgment to change the "TIME PAYMENT FEE/STATE" from $25.00 to $2.50. *See id.* at 341.

Accordingly, we modify the trial court's judgment, and as modified, we affirm.

JIM R. WRIGHT
SENIOR CHIEF JUSTICE

July 11, 2019

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[1]

Willson, J., not participating.

---

[1]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.